1  Abbas Kazerounian, Esq. (SBN: 249203)
2  ak@kazlg.com
   **KAZEROUNI LAW GROUP, APC**
3  245 Fischer Avenue, Suite D1
   Costa Mesa, CA 92626
4  Telephone: 800.400.6808
5  Facsimile: 800.520.5523

6  Yana A. Hart, Esq. (SBN: 306499)
7  yana@kazlg.com
   **KAZEROUNI LAW GROUP, APC**
8  2221 Camino Del Rio South, Suite 101
9  San Diego, CA 92108
   Telephone: (619) 233-7770
10 Facsimile: (619) 297-1022

11
12 [Additional Counsel On Signature Page]

13 Counsel for Plaintiffs & the Class

14
15          **UNITED STATES DISTRICT COURT**
16          **NORTHERN DISTRICT OF CALIFORNIA**

17 SAMARA GREEN; and BRETT            Case No.: 3:20-cv-5296
18 JACOB, on behalf of themselves and
   all others similarly situated,        CLASS ACTION COMPLAINT
19
20          Plaintiffs,                    1. O.C.G.A. §§ 10-1-390, et seq.;
                                           2. N.Y. Gen. Bus. Law § 340 et seq
21      v.
22 WELLS FARGO & COMPANY; and        DEMAND FOR JURY TRIAL
23 WELLS FARGO BANK, N.A.,
24          Defendants.
25
26
27
28

                        - 1 -
              CLASS ACTION COMPLAINT

Plaintiffs Brett Jacob and Samara Green (collectively, the "Plaintiffs"), individually and on behalf of the proposed Classes defined herein, bring this class action lawsuit for damages and injunctive relief resulting from the unlawful actions of Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo" or the "Defendants"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own experiences and, as to all other matters, upon information and belief including due investigation conducted by their attorneys.

## INTRODUCTION

1.    Wells Fargo is, among other things, a mortgage servicing company operating throughout the United States.

2.    As part of its mortgage servicing operations, Wells Fargo collects the monthly mortgage payments of borrowers (like Plaintiffs and the putative class members), and those funds are, in turn, applied to principal and interest, taxes and insurance as well as any other fees and charges that may have been assessed.

3.    Wells Fargo earns revenue from mortgage loan servicing in several ways.  For instance, Wells Fargo earns a per-loan servicing fee established by its servicing agreements with the owners of the loans that are entitled to payment of the principal and interest payments set forth in the mortgage loan instruments.

4.    Of particular relevance here, Wells Fargo earns "float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners.

5.    Additionally, Wells Fargo (as the loan servicer) retains all or part of certain fees it collects from borrowers, such as late charges, and for loans owned by various government sponsored enterprises ("GSEs"), like Ginnie Mae, Fannie Mae, and Freddie Mac, Wells Fargo earns fees for, among other things, filing incentive payments after loans are placed in forbearance.

6.    Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act in order to,

among many other things, provide some relief to millions of American homeowners struggling to make their mortgage payments as a result of the economic difficulties caused by the pandemic.

7.      The CARES Act instructed mortgagees and servicers to create mortgage forbearance provisions for all federally-backed mortgages, which includes loans serviced by Defendants on behalf of GSEs that acquire, securitize and insure repayment of the majority of consumer mortgage loans in America.

8.      The CARES Act makes it abundantly clear that participation in a COVID-19 mortgage forbearance program is entirely voluntary; that is, a mortgagor must be informed of the various terms and conditions of the program and then make a conscious decision to enter the program.

9.      The requirement of a volitional act on the part of mortgagor participants is intentional, as mortgage forbearance has serious consequences including an inability to obtain additional credit and/or to refinance any existing loans.

10.     As detailed herein, Wells Fargo unilaterally and without consent opted in unwitting clients into its COVID-19 mortgage forbearance program.

11.     As a result, those clients, including Plaintiffs, suffered damages, including, but not limited to, an inability to access credit, to refinance and in dealing with the difficult situation of removing their mortgages from a program they did not want.

12.     Defendants' actions are, unfortunately, yet another example of Wells Fargo being opportunistic to obtain results that benefit it financially without any regard for the desires or needs of its customers.

## PARTIES

13.     Plaintiff Samara Green is an individual who, at all relevant times, resided in Rockdale County, Georgia.

14.     Plaintiff Brett Jacob is an individual who, at all relevant times,

1   resided in Nassau County, New York.

2       15.     Defendant Wells Fargo & Company is a Delaware corporation
3   headquartered in San Francisco, California.

4       16.     Defendant Wells Fargo & Company is a diversified financial services
5   company that provides banking, insurance, investments, mortgage banking and other
6   products and services to consumers, businesses and other institutions.

7       17.     Defendant Wells Fargo & Company is reported to have
8   approximately $1.9 trillion in assets.

9       18.     Defendant Wells Fargo & Company is the parent corporation of
10  Defendant Wells Fargo Bank, N.A.

11      19.     Upon information and belief, Defendant Wells Fargo & Company
12  exercises specific and financial control over the operations of Wells Fargo Bank,
13  N.A., dictates the policies, procedures and practices of Defendant Wells Fargo Bank
14  N.A., exercises power and control over the specific activities upon which the claims
15  herein are based, and is the ultimate recipient of the ill-gotten gains described
16  herein.

17      20.     Defendant Wells Fargo Bank, N.A. is a national association that is
18  headquartered in South Dakota.

19      21.     Defendant Wells Fargo Bank, N.A. conducts mortgage servicing
20  operations through its Wells Fargo Home Mortgage division, which is headquartered
21  in Des Moines, Iowa.

22      22.     Plaintiffs' mortgages are currently serviced by Defendant Wells
23  Fargo Bank, N.A.

24                          **JURISDICTION & VENUE**

25      23.     Subject matter jurisdiction exists in this Court under the Class Action
26  Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiffs are
27  residents of different states (Georgia and New York, respectively) than that of
28  Defendant Wells Fargo & Company who has its principal place of businesses in

1  California and is incorporated in Delaware and Defendant Wells Fargo Bank, N.A.,
2  which has its principal place of business in South Dakota.

3       24.     When aggregated among a proposed class in the thousands, the
4  amount in controversy exceeds $5,000,000—exclusive of interest and costs—the
5  threshold for federal court jurisdiction.

6       25.     Both diversity jurisdiction and the damages requirement under CAFA
7  are satisfied, and this Court therefore has subject matter jurisdiction.

8       26.     This Court has personal jurisdiction over Defendant Wells Fargo &
9  Company which has its principal place of business in San Francisco, California and
10 is authorized to do business in California, transacts business in California and
11 maintains sufficient minimum contacts in California.

12      27.     This Court has personal jurisdiction over Defendant Wells Fargo
13 Bank, N.A., because it is authorized to do business in California, transacts business
14 in California and maintains sufficient minimum contacts in California.

15      28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and
16 (c) because a substantial part of the events giving rise to these claims occurred in
17 this District, Defendants regularly conduct business in this District and Defendant
18 Wells Fargo & Company has its principal place of business in this District.

19                          **FACTUAL ALLEGATIONS**

20 **I.   The Federal Government Passes the CARES Act to Help with the**
21      **Economic Harm Caused by the COVID-19 Pandemic.**

22      29.     On March 11, 2020, the World Health Organization ("WHO")
23 declared the COVID-19 outbreak a global pandemic.

24      30.     On March 13, 2020, the President issued the Coronavirus Disease
25 2019 (COVID-19) Emergency Declaration, which declared that the COVID-19
26 pandemic was of "sufficient severity and magnitude to warrant an emergency
27 declaration for all states, territories and the District of Columbia."

28      31.     The economic fallout from COVID-19 was immediate and continues

to be considerable.

32.     On March 25, 2020, in response to the economic damage beginning to be felt by Americans throughout the country, the United States Senate passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act.

33.     The CARES Act was passed by the House of Representatives the following day and signed into law on March 27, 2020. See generally CARES Act, Public Law No. 116-136.

34.     The CARES Act is the single-largest economic stimulus bill in United States' history, allocating approximately $2.2 trillion of support to individuals and business affected by the COVID-19 pandemic.

## II.     The CARES Act Provides Relief to American Homeowners with Government-backed Mortgages.

35.     A substantial part of the coronavirus aid package was designed to assist American homeowners with federally backed mortgages who were in distress as a result of the COVID-19 pandemic.

36.     First, the CARES Act assisted American homeowners with Government Sponsored Enterprise ("GSE") backed mortgages by prohibiting their lenders and mortgage services from beginning a judicial or non-judicial foreclosure or from finalizing a foreclosure judgment or sale through at least August 31, 2020.

37.     Second, and most relevant to this action, the CARES Act provided homeowners with GSE-backed loans experiencing financial hardships because of COVID-19 with the option to request up to 180 days of forbearance on their mortgage.

38.     Specifically, Section 4022(b) provides, in relevant part, that:

> (1)     IN GENERAL.—During the covered period [beginning February 15, 2020 and ending on June 30, 2020], a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency may request forbearance on

the Federally backed mortgage loan, regardless of delinquency status, by—

    (A)  submitting a request to the borrower's servicer and

    (B)  affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.

    (2)     DURATION OF FORBEARANCE.—Upon a request by a borrower for forbearance under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower, provided that, at the borrower's request, either the initial or extended period of forbearance may be shortened.

See CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat. 281, § 4022(b) (emphasis added).

    39.    Section 4022(c) provides, in relevant part, that:

Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provided the forbearance up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.

Id., § 4022(c) (emphasis added).

40.    These provisions make it abundantly clear that participation in a mortgagee's or servicer's mortgage forbearance program is voluntary and initiated only at the request of the mortgagor clients.

41.    As explained by the Consumer Financial Protection Bureau ("CFPB"), a forbearance is "when [] mortgage servicer[s] or lender[s] allow[ mortgagors] to pause (suspend), or reduce [their] mortgage payments for a limited period of time while [they] regain [their] financial footing."[1]

42.    Notably, while "the CARES Act provides many homeowners with the right to have all mortgage payments completely paused for a period of time," "[f]orbearance doesn't mean [mortgagors'] payments are forgiven or erased. [Rather, mortgagors] are still required to repay any missed or reduced payments in the future, which in most cases may be repaid over time."[2]

43.    The CARES Act provided for an extension of the forbearance period (for a total of up to 360 days) for homeowners that continued to experience difficulty in paying their mortgages once their initial 180-day term expired.[3]

44.    In order for mortgagors to avail themselves of the COVID-19 mortgage forbearance option, they were instructed to contact their loan servicer to obtain information and, if appropriate, request forbearance.[4]

---

[1]    https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/mortgage-relief/ (last visited July _, 2020).

[2]    *Id.*

[3]    https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/after-you-receive-relief/ (stating that "[i] f you still face financial hardship, you can request a forbearance extension**.** Under the CARES Act, if you have a federally or GSE-backed mortgage, you also can request and obtain an extension of the forbearance for up to an additional 180 days) (last visited July _, 2020).

[4]    *See* https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/request-forbearance-or-mortgage-relief/ (last visited July 24, 2020).

CLASS ACTION COMPLAINT

## III. The Implementation of the CARES Act is Met with Confusion & Uncertainty.

45.     While the CARES Act was passed quickly and with laudable intentions, there has been a tremendous amount of consumer confusion around many aspects of the Act including the forbearance program.

46.     Some of the terms are relatively straightforward in that lenders are not permitted to report forborne payments to the credit bureaus, which means that borrowers who request forbearance are not supposed to see any impact on their credit score as a result of their participation in a forbearance program.

47.     Additionally, the initial term of the mortgage forbearance program was designed to be 180 days and, after that term expires, lenders were instructed to work with borrowers to extend the forbearance or establish a repayment plan.[5]

48.     Leaving aside the issue of whether mortgagors are even aware that they are in a mortgage forbearance program, the provision that has caused the most confusion is that participating mortgagors often do not know if they have to get their mortgage current at the conclusion of the forbearance period or how their lender and/or servicer will treat the deferred payments.

49.     Fannie Mae and Freddie Mac attempted to address the confusion attendant to the post-CARES Act forbearance loss mitigation landscape when they introduced the "COVID-19 Payment Deferral" option with Lender Letter (LL-2020-

---

[5]     *See*         https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#FAQ5 (stating that "[f]orbearance in the CARES Act is broken down into two pieces; an *initial* period and an *additional* period.  For the initial period, you may notify your mortgage servicer that you are financially affected by the COVID-19 emergency and request up to 180 days of forbearance. For the additional period, you may notify your mortgage servicer that you are still financially affected by the COVID-19 emergency and request up to 180 additional days of forbearance.") (last visited July 24, 2020).

07) and Bulletin 2020-15.[6]

50.   The COVID-19 Payment Deferral instructs that all forborne payments (up to 12 months) are to be placed into a non-interest bearing balance to be paid back at the end of the loan term.

51.   The COVID-19 Payment Deferral brought Fannie Mae and Freddie Mac in line with the United States Department of Housing and Urban Development's ("HUD") COVID-19 National Emergency Standalone Partial Claim option, which provides borrowers with a junior mortgage (zero additional interest, no fees) not payable until the mortgage is paid off, comprised of the total amount of payments missed during a CARES Act forbearance period.[7]

52.   Although various government entities attempted to clarify the law, the mortgagees and servicers fail to comply as evidenced by, among other things, a report published (in late April) by HUD's Office of Inspector General ("OIG"), which conducted a study of the top 30 mortgage servicers 22 days after the CARES Act was enacted.

53.   That study, entitled Some Mortgage Loan Servicers' Websites Offer Information about CARES Act Loan Forbearance That Is Incomplete, Inconsistent, Dated, and Unclear, analyzed the information that mortgagees and servicers were providing to borrowers regarding forbearance.[8]

---

[6]   Lender Letter 2020-07 is available here: https://singlefamily.fanniemae.com/media/22916/display and Bulletin 2020-15 is available here: https://guide.freddiemac.com/app/guide/bulletin/2020-15 (last visited July __, 2020).

[7]   HUD's Mortgagee Letter 2020-06 is available here: https://www.hud.gov/sites/dfiles/OCHCO/documents/20-06hsngml.pdf (last visited July 24, 2020).

[8]   The report is available here: https://www.hudoig.gov/sites/default/files/2020-04/Single%20Family%20Mortgage%20Forbearance%20Brief.pdf (last visited July 24, 2020).

54.     HUD's OIG ultimately concluded that information from mortgagees and servicers was "incomplete, inconsistent, dated, and unclear" because, among other things, not all mortgage servicer websites provided readily accessible information, the information about the duration of forbearance was inconsistent; the information was not brought up to date to meet the mandates of the final CARES Act; and/or the servicer "gave the impression" that a lump sum payment was necessary at the end of the forbearance.

55.     The CFPB's May 2020 Complaint Bulletin, covering complaints mentioning coronavirus keywords, echoed HUD OIG findings and the House Financial Services Committee's criticisms, observing, among common complaints, that consumers were unable to reach customer service representatives and faced long hold times, and were informed by their mortgage servicers that they would have to repay 90-day forbearances in a lump sum at the end of the 90-day period.[9]

**III.     Approximately 4.58 Million Homeowners with Federally-backed Loans Are in a Forbearance Program, Many of them Unwittingly.**

56.     As of June 30, 4.58 million homeowners are in COVID-19 related forbearance plans, representing 8.6% of all active mortgages.[10]

57.     Some 6.8% of all GSE-backed loans and 12.3% of all FHA/VA loans are currently in forbearance plans.[11]

---

[9]     The CFPB's May Bulletin is accessible here: https://www.consumerfinance.gov/about-us/newsroom/cfpb-issues-consumer-complaint-bulletin/ and the Report, entitled *Complaint Bulletin, Complaints Mentioning Coronavirus Keywords*, is accessible here: https://files.consumerfinance.gov/f/documents/cfpb_complaint-bulletin_coronavirus-complaints.pdf (last visited July 24, 2020).

[10]     *See* https://www.cnbc.com/2020/07/03/loans-in-coronavirus-mortgage-bailouts-see-largest-weekly-decline-yet.html (last visited July 24, 2020).

[11]     *See* https://www.blackknightinc.com/blog-posts/forbearance-volumes-reverse-course-for-largest-decline-yet/ (last visited July 24, 2020).

CLASS ACTION COMPLAINT

58.     Federally backed mortgages (including GSEs Freddie Mac and Fannie Mae) constitute 62 percent of all first lien mortgages.[12]

59.     Mortgages owned by private lenders, such as banks, are not included in the relief proscribed by the CARES Act.

60.     About 30%, or roughly 14.5 million U.S. mortgages, are privately owned and not backed by any federal agency.[13]

61.     Approximately 11% of these privately-held mortgages remain in some type of forbearance or deferment program.



## IV.   Wells Fargo Unilaterally Opted Homeowners into Forbearance Program

62.     Since the passage of the CARES Act in late March, millions of homeowners across the country have attempted to obtain information from their mortgage servicers and lenders as to the specifics of their COVID-19 forbearance

---

[12]     *See* https://www.americanactionforum.org/insight/the-cares-act-and-mortgage-servicers/#ixzz6SxUvL79W (last visited July 24, 2020).

[13]     *See* https://www.cnbc.com/2020/07/15/privately-held-mortgage-forbearance-may-be-difficult-for-americans-to-navigate.html (last visited July 24, 2020).

1   program.[14]

2   63.   As numerous media reports have detailed, many servicers unilaterally

3   put borrowers into their mortgage forbearance program despite no clear indication

4   of consent.[15]

5   64.   Thousands of homeowners were put into mortgage forbearance

6   programs they did not request, causing substantial problems for those homeowners.

7   65.   Being in forbearance prevents those homeowners from taking out new

8   home loans or refinancing their existing mortgages (not to mention obtaining any

9   additional credit).

10   66.   As told by a Wells Fargo mortgage servicer client, it is virtually

11   impossible to obtain form of credit for up to a year after a forbearance program has

12   concluded:

13
14
15          the note on his credit report saying the loan is in
           forbearance makes it impossible for him to refinance.
16          Fannie Mae and Freddie Mac, which, along with the
           Federal Housing Administration and the Department of
17          Veterans Affairs, fund or insure the vast majority of
           mortgages from lenders, do not allow borrowers with a
18          loan in forbearance to either refinance or obtain a new
           loan until one year after the loan payments are up to date
19          again.[16]

20
21   [14]   *Homeowners are getting mortgage relief they didn't want*, Anna Bahney, May
     2020 (https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-
22   complaints-coronavirus/index.html (last visited July 24, 2020).

23   [15]   *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-
     mortgage-bailouts-by-mistake.html (last visited July 24, 2020).
24
     [16]   *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-
25   mortgage-bailouts-by-mistake.html (last visited July 24, 2020) (stating that "It also
     puts barriers in front of homeowners who could really benefit now from refinancing
26   and saving on their monthly payments. Servicers are swamped with those requests as
     well. Applications to refinance a home loan are currently up more than 200% from a
27   year ago").

28

CLASS ACTION COMPLAINT

67.     When reached for comment, Wells Fargo stated: "[w]e encourage customers to continue making their payments if they can but are granting an immediate three-month payment suspension for any Wells Fargo Home Lending mortgage or home equity customer who requests assistance. For customers who contact us to take advantage of a payment suspension, we won't report past-due status to the consumer reporting agencies or charge late fees during the suspension period."[17]

68.     Wells Fargo continued by stating that "[c]ustomers who reach us by telephone will get an immediate verbal confirmation of their three-month payment suspension. Because our contact centers are experiencing significant call volumes, we encourage mortgage customers to log into their account on WellsFargo.com and click on the banner in the mortgage account, follow the easy steps to submit request for payment relief, and receive immediate confirmation. In either case, customers will receive a confirmation letter within 7-10 days after our initial response."[18]

69.     Wells Fargo has acknowledged that merely inquiring about forbearance options should not result in a borrower's unwitting entry into the program.

70.     Specifically, Tom Goyda, a Wells Fargo consumer lending spokesperson admitted that, "[j]ust asking about a forbearance should not result in a

---

[17]     *See* https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited July 24, 2020).

[18]     *See*          https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited July 24, 2020).

CLASS ACTION COMPLAINT

forbearance being applied."[19]

71.     Despite these public statements, Wells Fargo has publicly acknowledged unilaterally opting Chapter 13 debtors into its COVID-19 mortgage forbearance program.

72.     According to a recent media report, Troy Harlow has always made sure to pay his mortgage on time Wells Fargo had other plans for him, Wells Fargo monitored the Chapter 13 bankruptcy dockets of its debtor clients and unilaterally opted them into its mortgage forbearance program.[20]

73.     The article details the plight of numerous borrowers who had been unwittingly opted into Wells Fargo's mortgage forbearance program:

> None of the borrowers in the lawsuit who were contacted by NBC News told the bank that they'd been affected by COVID-19, and none had requested the bank's assistance because of it. Nor had they requested loan modifications when Wells Fargo claimed they wanted forbearance. In addition, none of the borrowers or their attorneys say they were contacted by Wells Fargo.

> Asked about the discrepancies, Wells Fargo said that because it had seen references to COVID-19 in the borrowers' court filings, it provided forbearance.[21]

74.     When reached for comment, Wells Fargo did not deny the practice of unilaterally opting-in persons to its mortgage forbearance program:

---

[19]    See https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited July 24, 2020).

[20]    *See* https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited July 24, 2020).

[21]    *See* https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited July 24, 2020) (emphasis added).

"During this unprecedented time, we've focused on ensuring that our customers who need assistance receive the benefits of available relief programs," the statement said.

"In the early days of the pandemic, we provided immediate payment relief to customers in bankruptcy if a review of their court filings indicated they were impacted by COVID-19 or if they had a loan modification review in process.

In those cases, we notified the customers or their attorneys and filed a notice with the court. We followed up with customers in these circumstances after some raised questions and, in the majority of cases, those we have contacted wanted the payment relief. If a customer does not want a forbearance, we remove it and notify the bankruptcy courts."[22]

75. The Wells Fargo spokeswoman declined to say whether the bank has benefited financially from making unrequested forbearance filings.[23]

76. But Wells Fargo is compensated financially by the various federal agencies on whose behalf it services borrowers' loans when it files forbearance notices and when it completes loan retention workout options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

77. Upon information and belief, for each loan placed into forbearance that Wells Fargo subsequently modifies in accordance with Fannie Mae and Freddie Mac's matrix for loan retention workout options, Wells Fargo receives an incentive fee of up to $1,500.[24]

78. Upon information and belief, for each loan placed into forbearance for

---

[22] *Id.* (emphasis added).

[23] *Id.*

[24] *See* https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#73c99373edc5 (last visited July 24, 2020).

which Wells Fargo subsequently defers repayment of some or all of the forborne payments until loan maturity in accordance with Fannie Mae and Freddie Mac's matrix for loan retention workout options, Wells Fargo receives an incentive fee of $500.

79.     Upon information and belief, for each loan placed into forbearance for which Wells Fargo enters into a completed repayment plan in accordance with Fannie Mae and Freddie Mac's matrix for loan retention options, Wells Fargo receives an incentive fee of $500.[25]

80.     Upon information and belief, Wells Fargo also receives servicing income for the loans it services, and Plaintiffs are informed and believe and therefore allege that Wells Fargo is incentivized to modify its customers' mortgage loans following a CARES Act forbearance in a way that extends the loan's term and lowers the borrower's monthly mortgage payment in order to prevent "run off" of loan servicing rights, which occurs when borrowers sell their homes or refinance their mortgages.

81.     Implementing forbearance plans without customer approval is reminiscent of other troubling practices at Wells Fargo in recent years.[26]

82.     Starting next month, Fannie Mae has new rules benefiting loan servicers like Wells Fargo whose customers are in forbearance.[27] Normally, banks handling home loans held by Fannie Mae must continue forwarding borrowers' mortgage payments to the government entity, even when they stop paying.[28]

83.     But under the new rules, banks can stop advancing Fannie Mae borrowers' mortgage payments after four months if the borrowers have stopped

---

[25]    *Id.*

[26]    *See*      https://www.nbcnews.com/news/all/wells-fargo-pay-3-billion-over-fake-account-scandal-n1140541 (last visited July 24, 2020).

[27]       https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited July 24, 2020).

[28]    *Id.*

CLASS ACTION COMPLAINT

paying because they are in forbearance programs.[29]

## V.   Impacts of Unwanted Forbearance on Consumers.

84.   Wells Fargo's practice of unilaterally opting mortgagors into unwanted forbearance program is not limited to its Chapter 13 debtor clients.

85.   Rather, as detailed extensively herein, many homeowners were put into forbearance programs they did not want which has caused injury to those homeowners.[30]

86.   Even if mortgagees do not report forborne accounts as delinquent, there are nonetheless many practical and immediate impacts of participating in a mortgage forbearance program; chief among them is that participation in a forbearance program prohibits homeowners from taking out new loans or refinancing their existing mortgages.[31]

87.   Wells Fargo has made note on the reports they send to credit reporting agencies that the homeowners who they have placed in forbearance—including those who never requested it—have suspended their mortgage payments.[32]

88.   Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the Department of Veterans Affairs, fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a loan in forbearance to either refinance or to obtain a new loan until one year after the loan

---

[29]   *Id.*

[30]   *See*          https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited July 24, 2020).

[31]   The Cares Act is clear that participation in a forbearance program should not negatively impact mortgagee's credit scores. According to the CARES Act, if a mortgagee is in forbearance because of the pandemic, their loan status is to be reported as current on payments.

[32]   *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited July 24, 2020).

payments are up to date again.[33]

## VI.   Wells Fargo's Practice of Unilaterally Opting Consumers Into a Forbearance Program Yields Consumer Complaints.

89.     The lack of clarity around Wells Fargo's mortgage forbearance programs has caused great stress to thousands of homeowners and led to many consumer complaints.

90.     Frustration seeps through long threads on social media channels populated with mortgage borrowers unnerved by, among other things, their inability to reach lenders over the phone and upset with the forbearance assistance they are offered once someone answers their calls.[34]

91.     Complaints filed with the CFPB have risen dramatically since the beginning of the COVID-19 outbreak, and many of those come from homeowners who complain that they were placed in forbearance without requesting it.[35]

92.     Oversight of the forbearance program is woefully inadequate, so it's unsurprising that the biggest coronavirus problems are related to mortgages," said Mike Litt, the consumer campaign director at U.S. PIRG.[36]

93.     A representative complaint of a person who filed a complaint with the CFPB noted that Wells Fargo unilaterally opted her into a mortgage forbearance program without her consent:

> **I contacted my mortgage servicer . . . for informational purposes only, to see what programs they were offering during the COVID-19 pandemic . . . . I stated I did NOT want to be on a forbearance plan.**

---

[33]     *Id.*

[34]     https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5   (last visited July 24, 2020).

[35]     https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited July 24, 2020).

[36]     *Id.*

**The stress of the situation has affected my physical and mental well-being, strained my personal relationships as well as the ability to do my job.  I have spent hours on the phone, and writing letters . . . I wonder, how many others this is happening to?[37]**

94.      A recent article in Forbes details the experience of Morgan Davis, a furloughed clothing designer, who called Wells Fargo to ask for help with her FHA loan.[38]

95.      According to the borrower, Wells Fargo offered to suspend her mortgage for three payments without penalty, but Ms. Davis declined because "at the end of those three months, all my mortgage payments would be due at once."[39]

96.      Unbeknownst to Ms. David and against her wishes, Wells Fargo unilaterally opted her into a mortgage forbearance program.

97.      Ms. Davis only found out that she was entered into the program when she attempted to pay her next month's mortgage and was informed that her "Wells Fargo checking and savings accounts are ineligible to pay [her] Wells Fargo mortgage."

98.      According to the Forbes article, Ms. Davis also received a letter confirming the receipt of her loan modification request, a request she says she never made.[40]

99.      Another mortgagor similarly called Wells Fargo to get information and

---

[37]     https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited July 24, 2020).

[38]     https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5  (last visited July 24, 2020).

[39]     https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5  (last visited July 24, 2020).

[40]     *Id.*

1  later found out his mortgage was in forbearance.[41]

2      100.   The borrower said he sent an email to Wells Fargo, which services his

3  loan, because he "was asking to be educated on what [his] options were [but

4  s]omeone put me in this and never told me what it was."

5      101.   As with Ms. Davis, when this Wells Fargo servicer client went to make

6  his next payment, he was informed that he could not because there was no "eligible

7  account to make the payment on."[42]

8      102.   When this Wells Fargo customer attempted to refinance (in order to take

9  advantage of record low mortgage rates), his mortgage broker informed him that the

10  loan was in forbearance, and he was therefore unable to refinance.

11      103.   The borrower again contacted Wells Fargo and asked to be removed

12  from forbearance. That was April 23, and he says his loan is still listed as in

13  forbearance.

14      104.   Similarly, a recent CNN.com article, entitled Homeowners are getting

15  mortgage relief they didn't want, details additional instances of the problem:

16      "I never asked to be in the program," said D.J. Stavropoulos, a real
17      estate agent in Atlanta who said he called his mortgage servicer, Wells
    Fargo, in March just to get information about how a forbearance
18      would work.

19      Nonetheless, at the beginning of May, he received a letter from Wells
20      Fargo confirming that his loan was in forbearance.

21      "I was alarmed they were doing this behind my back," Stavropoulos
22      said. "I think the average person is as confused as I was and may be
23      surprised to find they are in forbearance and not know it."[43]

24  _____

25  [41]  https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-
26  mortgage-bailouts-by-mistake.html

27  [42]  *Id.*
28  [43]  https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-
complaints-coronavirus/index.html (last visited July 24, 2020).

105.   Unfortunately, these Wells Fargo clients' stories are not isolated incidents.

106.   Rather, the CFPB website is replete with additional instances of persons who were involuntarily and unwittingly opted into a mortgage forbearance program with Wells Fargo.

107.   For instance, this Wells Fargo customer was involuntarily placed into forbearance twice:

> **My account with Wells Fargo was placed in forbearance or trial plan by mistake in XXXX, twice. First week of XX/XX/2020, the account goes into forbearance, payments are not accepted based on a problem with Wells Fargo systems and then the account goes out of the plan. Later, at the end of XXXX the account goes again in forbearance and I had to call Wells Fargo once again to get it removed. They finally did this on XXXX XXXX. I spoke with several representatives, the last one being XXXX XXXX who after several phones told me on XX/XX/XXXX that he got approval to issue a letter stating that the account was placed in forbearance by mistake and that he was only waiting for the legal department to approve the language of such letter. After waiting for a week, I spoke again to XXXX. XXXX on XX/XX/XXXX, who informed of the decision by Wells Fargo to not provide such letter. This situation has generated significant issues on my side, as other lenders are now reluctant to provide any financing until the situation gets resolved or some time goes by before they are willing to look at my applications again. The major issue here, other than the account being inadvertently placed in forbearance is that Wells Fargo continue to mislead customers telling them that accounts entering forbearance during covid19 will not impact credit scores, but they massively fail in disclosing that credit score agencies will still be informed about the situation and that a note on the report will indicate that at some point, the account was in forbearance. Even if this does not affect scores, it DOES affect customers with an impeccable record of never having missed a single**

CLASS ACTION COMPLAINT

**payment or liability in their whole lives. Wells Fargo continue with their old practice of misleading customers. A smart lender will always look through scores and if there is anything else on the report that could be a cause for concern, then it's reasonable to believe that a note on the report such as the one Wells Fargo has now created on mine, could become a big issue to me in the future.[44]**

108.    Another Wells Fargo customer called to obtain information regarding the mortgage forbearance program and was unwittingly opted into the program ultimately damaging his credit score:

**I called Wells Fargo for information about what to do With mortgage during covid pandemic being wife and I lost our employment during New York State pause order. I was offered a forbearance agreement or deferral that I was assured I would receive paper work on and it would not be reported to credit reporting agency during this time of national pandemic. I was reluctant to go into anything but requested information be sent to me. Credit report indicates In forbearance it also indicates last payment received was XXXX but I have paid XXXX XXXX and XXXX. This has negatively affected My credit with all credit reporting agencies. I did not sign anything to agree to forbearance and subsequent calls to them I stressed that Im paying my mortgage and dont want a forbearance. Instead they listed it on my credit without authorization. When I called them they said it was an error n they are working on it. They ruined my wife and my credit.[45]**

109.    These Wells Fargo clients were likewise opted into Wells Fargo's mortgage forbearance program without their consent:

---

[44]    https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3678207 (last visited July __, 2020).

[45] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3662758

CLASS ACTION COMPLAINT

- Wells Fargo put me into CARES act forbearance without my consent. I was unable to make a payment online like I usually do. I called and was on hold for an hour but finally was able to talk to a rep, named XXXX. I told them they put me into forbearance without my consent. He apologized and said that the system is like a " hair trigger " even though I did nothing to start a forbearance, I've never missed a payment, have no reason to apply for forbearance and am able to make payments. The rep said he would reverse the forbearance but that it would take 2-3 days and took my payment over the phone. This took place on XX/XX/20. I have recently been looking into refinancing with rates so low. I get an email today from my new potential lender stating that my credit report, which they pulled XX/XX/20, showed that my current mortgage with Wells Fargo is in forbearance, labeled " payment deferred ". This may affect my ability to refinance my home. Also, Wells Fargo is contacting me about refinancing. On the XXXX website and under the CARES act it states: As part of the recently enacted Coronavirus Aid, Relief and Economic Security ( CARES ) Act, mortgage accounts in forbearance as a result of COVID-19 cannot be reported negatively to the credit bureaus by lenders. The wrongs are in apply forbearance to my mortgage without verbal OR written consent and the fact that they reported this forbearance to the credit bureaus. And now on my account showing the payment I made on the phone for my XXXX payment is deemed " unapplied funds " with the description on their website : We have received funds that are not sufficient to make a full payment on your loan. If we are automatically withdrawing your payments based on a recurring weekly, bi-weekly, or semi-monthly schedule, your funds remain unapplied until we have received an amount sufficient to make a full monthly payment for you. If you are on a repayment plan and have made an agreement to make payment amounts that are different from your regular monthly payment, some funds may be unapplied. This is infuriating and could cost me ~ $ XXXX in interest

CLASS ACTION COMPLAINT

savings and a decrease in previously exceptional credit of XXXX.[46]

- Due to covid19 I asked for information on the wells Fargo forbearance process on my mortgage. I was told I would receive information by mail. When I received my letter I was told that I was eligible and to go online to confirm and cancel my automatic payments. Also it stated that if I didn't need the assistance no action was needed I could disregard and nothing more will be done. XX/XX/XXXX I noticed my payment didnt get drafted. Called XX/XX/XXXX. Was told I was in the forbearance program. I never requested this to be done, only asked for information. I requested that day and twice since requested but it has not processed to be removed from the program.[47]

- Due to a job loss, I reached out to Wells Fargo and asked for information on their Covid-19 mortgage relief program. To clarify, I only asked for information on the program. The representative on the phone stated that an information packet would be mailed to me. About a week later, a letter arrived from Wells Fargo stating that they are " confirming short term payment relief for the account. " This was not what I had requested. In addition, the letter states " We won't report this account to consumer reporting agencies. " It has now come to light that Wells Fargo has put a forbearance on the mortgage, preventing any ability to refinance. I am current on my mortgage payments and did not want to be part of their relief program, but now I have a forbearance blemish on my mortgage.[48]

---

[46] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3663700 (accessed on July 24, 2020)

[47] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3661535 (accessed on July 24, 2020)

[48] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3658898(accessed on July 24, 2020)

CLASS ACTION COMPLAINT

**FACTS SPECIFIC TO REPRESENTATIVE PLAINTIFFS**

**I.     Facts Specific to Plaintiff Brett Jacob.**

110.    Plaintiff Brett Jacob has a mortgage serviced by Wells Fargo.

111.    Wells Fargo collects payments and performs services for Mr. Jacob, the borrower.

112.    On or about March 16, 2020, Mr. Jacob called Wells Fargo and asked that his mortgage payments no longer be automatically debited from his bank account.

113.    Mr. Jacob requested that he be permitted to make payments at a time and in a manner of his own choosing.  Wells Fargo honored Mr. Jacob's request and, a few days later, Mr. Jacob received a letter from Wells Fargo dated March 20, 2020 confirming that Wells Fargo had "completed your request to suspend your automatic mortgage payments."

114.    However, approximately one week later, Mr. Jacob received a second letter from Wells Fargo dated March 26, 2020.  This letter informed Mr. Jacob, much to his surprise, that Wells Fargo had placed his mortgage into short-term payment relief—or forbearance— for six months.  The letter stated that his monthly mortgage obligations had been suspended until October 1, 2020.

115.    Mr. Jacob never requested that Wells Fargo place his mortgage into forbearance.

116.    Since being placed in forbearance, Mr. Jacob has tried to make mortgage payments, but Wells Fargo suspended his online payment option.

117.    Further, though Wells Fargo assures its customers otherwise, the forbearance that he did not request is reflected on his credit report.

118.    After Wells Fargo placed him in forbearance, Mr. Jacob attempted to secure a small-business loan but was denied, at least in part, because the lender

pulled his credit report and saw that his mortgage had been placed in forbearance.

119.    In addition, Mr. Jacob's attempt to refinance his mortgage and to obtain a lower interest rate on his mortgage was denied because Wells Fargo placed his mortgage into forbearance without his consent.

120.    In short, Mr. Jacob did not request a forbearance of his mortgage loan payment obligations, did not contact Wells Fargo about a forbearance and did not—and does not—want a forbearance of his mortgage payment obligations.

121.    Yet, Wells Fargo placed his loan in a forbearance, and reported it to credit reporting agencies such that is appears on Mr. Jacob's consumer disclosures.

**II.    Facts Specific to Plaintiff Samara Green.**

122.    Plaintiff Samara Green has a mortgage serviced by Wells Fargo.

123.    Wells Fargo collects payments and performs services for Ms. Green, the borrower.

124.    On or about June 15, 2020, a representative from Wells Fargo called Ms. Green to address concerns Ms. Green had about her escrow payments.  During this call, the Wells Fargo representative explained to Ms. Green about the option of placing her mortgage in forbearance.

125.    Ms. Green told the Wells Fargo representative that she was not interested in Wells Fargo's forbearance program.

126.    Prior to the June 15, 2020 phone call, Ms. Green had already made a mortgage payment to Wells Fargo on June 12, 2020.

127.    However, unbeknownst to Ms. Green, her June 12, 2020 payment was never applied to her mortgage or her escrow accounts because Wells Fargo placed her mortgage into forbearance prior to the application of her payment and without her knowledge or consent.

128.    On or around June 26, 2020 Ms. Green called Wells Fargo again to further inquire about fees and the application of escrow payments.  During this phone call, the Wells Fargo representative informed Ms. Green that her mortgage

had been placed in forbearance.

129.     Ms. Green informed the representative that she had never requested or consented to a forbearance on her mortgage, that Wells Fargo had acted without her knowledge or consent, and demanded that her account be taken out of forbearance.

130.     Ms. Green received a letter from Wells Fargo dated July 1, 2020 which memorialized this conversation.  As the letter recounted, Wells Fargo placed Ms. Green's mortgage into forbearance though she "did not request this."

131.     Wells Fargo admits in the letter that though Ms. Green called Wells Fargo to discuss suspending her late payments, Wells Fargo instead suspended all her mortgage payments.

132.     Wells Fargo never informed Ms. Green, neither on the June 26, 2020 phone call or in the July 1, 2020 letter, that Wells Fargo failed to apply her June 12, 2020 payment to her mortgage.

133.     On or about July 15, 2020, Ms. Green went to a Wells Fargo bank branch local to her in order to make another mortgage payment to Wells Fargo.

134.     However, when Ms. Green spoke with the Wells Fargo representative at the bank branch, she was told that the amount due on her mortgage was over $3,500, that her prior June payment had not been applied to her mortgage or her escrow, and that her mortgage had been placed in forbearance.

135.     After Ms. Green's visit to the Wells Fargo branch, she immediately called Wells Fargo and spoke to a representative.  The Wells Fargo representative confirmed that Ms. Green's mortgage payment had not been applied to her mortgage or her escrow because she had been placed in forbearance.  The Wells Fargo representative told Ms. Green that her payment had been placed in an "unapplied fund" and that those payments would be reversed because they could not be applied to her mortgage or escrow while she was in forbearance.

136.     Because Wells Fargo failed to properly apply her June 12, 2020

1  payment, Wells Fargo reported to the Credit Reporting Agencies that Ms. Green was
2  30 days late on her mortgage for the month of June 2020.

3      137.    As with Mr. Jacob, Ms. Green did not request a forbearance of her
4  mortgage loan payment obligations, did not contact Wells Fargo about a
5  forbearance, and she did not—and does not—want a forbearance of her mortgage
6  payment obligations.

7                        **CLASS ALLEGATIONS**

8      138.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on
9  behalf of themselves and a class of similarly situated individuals.

10     139.    Plaintiffs seek to represent the following class:

11
12          Georgia Class:

13          All persons with the Georgia addresses with a mortgage
            loan serviced by Wells Fargo whose mortgage was placed
14          into Wells Fargo COVID-19 Mortgage Forbearance
15          Program without their consent.[49]

16          New York Class:

17          All persons with the New York addresses with a mortgage
18          loan serviced by Wells Fargo whose mortgage was placed
            into Wells Fargo COVID-19 Mortgage Forbearance
19          Program without their consent.[50]

20     140.    Numerosity: Members of the Georgia and New York classes
21
22  (Collectively "Class") are so numerous that joinder of all members is impracticable.

23

24  [49]    Plaintiffs reserve the right to modify or to amend the definition of the
25  proposed class and subclass before the Court determines whether certification is
    appropriate and as the parties engage in discovery.

26
27  [50]    Plaintiffs reserve the right to modify or to amend the definition of the
28  proposed class and subclass before the Court determines whether certification is
    appropriate and as the parties engage in discovery.

While the exact number of Class Members remains unknown at this time, upon information and belief, there are tens of thousands of putative Class Members throughout the United States who are generally ascertainable by appropriate discovery. A class action is the only feasible method of adjudicating the rights of the affected borrowers, and, absent allowance of a certification of a class action, a failure of justice will result.

141.   Commonality: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following: whether Wells Fargo engaged and engages in the practices complained of and whether such actions violate the law, as alleged. Specifically, the common question of law is whether Defendants' practice of unilaterally opting its mortgagor clients into its COVID-19 mortgage forbearance program so that they were unable to, among other things, obtain additional credit and/or to refinance their existing mortgage loans, violates the law.

142.   Typicality: Plaintiffs' claims are typical of those of the other Class Members because, inter alia, all members of the Class were injured through the common misconduct described above and were subject to Wells Fargo's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

143.   Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

144.   Superiority: Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a

single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

145.   The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class Members for the wrongs alleged because Wells Fargo would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

146.   The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

147.   Plaintiffs do not anticipate any difficulty in the management of this litigation.

CLASS ACTION COMPLAINT

# COUNT I

## Violation of the Georgia Fair Business Practices Act

## O.C.G.A. §§ 10-1-390, et seq.

### (On Behalf of Plaintiff Green and on the Georgia Class)

148.     Plaintiff Green re-alleges and incorporates by reference the above-numbered paragraphs.

149.     Wells Fargo committed unfair business acts and practices in violation of The Georgia Fair Business Practices Act, O.C.G.A §§ 10-1-390, *et seq*., by inaccurately reported to credit reporting agencies that Plaintiff's and the purported class members' mortgages were "in forbearance" when Plaintiff and the purported class members never requested that their mortgage payments be suspended.

150.     Further, Wells Fargo committed unfair practice by failing to disclose and provide Plaintiff Green with a voluntary option of opting into the forbearance program should Plaintiff chose to do so.

151.     Wells Fargo failed to disclose the consequences of forbearance option, and moreover, involuntarily opted Plaintiff Green and Georgia Class Members into this program.

152.     Wells Fargo's unconscionable, deceptive and/or unfair practices caused damages to Plaintiff Green and the Georgia Class Members who were unaware that their mortgages had been place "in forbearance" without their knowledge or consent.

153.     Defendants' foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

154.     As a direct and proximate result of Wells Fargo's unfair and deceptive practices, Plaintiffs and class members suffered and will continue to suffer actual damages.

155.     As a direct and proximate result of Defendants' deceptive acts and

1  practices, including their omissions, Plaintiff Green and Georgia Class Members have
2  been damaged as alleged herein, and are entitled to recover actual damages to the
3  extent permitted by law, including class action rules, in an amount to be proven at
4  trial.

5       156.   In addition, Plaintiff Green and Georgia Class Members seek equitable
6  and injunctive relief against Wells Fargo on terms that the Court considers
7  reasonable, and reasonable attorneys' fees and costs.

**COUNT II**

**Violation of the New York Deceptive Trade Practices Act**

**N.Y. Gen. Bus. Law § 340**

**(On Behalf of Plaintiff Jacob and on the New York Class)**

13
14       157.   Plaintiff Jacob re-alleges and incorporates by reference the above-numbered paragraphs.

15
16       158.   Wells Fargo committed unfair business acts and practices in violation of
17  The New York General Business Law § 349, *et seq*., by inaccurately reported to
18  credit reporting agencies that Plaintiff Jacob's and the purported class members'
19  mortgages were "in forbearance" when Plaintiff Jacob and the purported class
   members never requested that their mortgage payments be suspended.

20
21       159.   Further, Wells Fargo committed unfair practice by failing to disclose and
22  provide Plaintiff Jacob with a voluntary option of opting into the forbearance
   program should Plaintiff chose to do so.

23
24       160.   Wells Fargo failed to disclose the consequences of forbearance option,
25  and moreover, involuntarily opted Plaintiff Jacob and Georgia class Members into
   this program.

26
27       161.   Wells Fargo's practices were consumer oriented because they essentially
   placed unwilling consumers, who wished to continue making payments on their loans

28

CLASS ACTION COMPLAINT

and preserve their credit history, into forbearance, without even notifying such consumers.

162. Wells Fargo's unconscionable, deceptive and/or unfair practices caused damages to Plaintiff Jacob and the New York Class Members who were unaware that their mortgages had been place "in forbearance" without their knowledge or consent.

163. Defendants' foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

164. As a direct and proximate result of Wells Fargo's unfair and deceptive practices, Plaintiffs and class members suffered and will continue to suffer actual damages.

165. Defendants' practice was misleading in a material respect because it caused Plaintiff and New York Class members damages.

166. Plaintiff did not wish to opt in to forbearance, and yet, that was not an option for him.

167. As a direct and proximate result of Defendants' deceptive acts and practices, including their omissions, Plaintiff Jacob and New York Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

168. In addition, Plaintiff Jacob and New York Class Members seek equitable and injunctive relief against Wells Fargo on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## COUNT III

## REQUEST FOR DECLARATORY RELIEF

169. As a result of its unfair and deceptive conduct and ongoing injustice, Wells Fargo has been unjustly enriched and should be required to disgorge its unjust

profits and make restitution to Plaintiffs and Class members.

## COUNT V

### REQUEST FOR INJUNCTIVE RELIEF

170.   Plaintiffs re-allege and incorporate by reference the above-numbered paragraphs.

171.   Plaintiffs and the class are entitled to an injunction permanently enjoining Defendants from engaging in the acts and practices above as to any person who is a member, or could become a member, of the class of persons described in this suit.

172.   Plaintiffs and the class are entitled to a preliminary injunction, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from engaging in the acts and practices described herein.

173.   Plaintiffs assert that, absent an injunction to prevent such misconduct, Defendants and their attorneys, agents, vendors, and/or other representatives will continue

174.   The harm faced by the Plaintiffs and the class outweighs any "harm" that will be sustained by Defendants if the preliminary injunction were granted.

175.   These far outweigh Defendants' interest in profiting in connection with the impermissible opting-in unwitting Wells Fargo mortgagor clients into its COVID-19 mortgage forbearance program.

176.   Issuing a preliminary injunction will not adversely affect the public interest but rather will enhance it.

177.   The posting of a bond is not a prerequisite to the issuance of a preliminary injunction in this case because Defendants cannot demonstrate that preserving the status quo will cause it cognizable economic harm.

178.   Plaintiffs ask the Court to set this application for preliminary injunction for hearing if the parties are unable to agree to a preliminary injunction and, after

CLASS ACTION COMPLAINT

hearing the request, issue a preliminary injunction against Wells Fargo enjoining it from the actions set out above.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants and each of them, as follows:

      A.    Determining that this action is a proper class action;

      B.    Designating Plaintiffs as class representatives under Federal Rule of Civil Procedure 23;

      C.    Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

      D.    Costs of suit;

      E.    Awarding damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

      F.    Statutory damages to be awarded to each class member under N.Y. Gen. Bus. Law. § 340, up to $2,000 (to each person);

      G.    Attorneys' fees under N.Y. Gen. Bus. Law § 340 *et al* and O.C.G.A. §§ 10-1-399(d);

      H.    Statutory, exemplary, and/or treble damages under O.C.G.A. § 10-1-399(a),

      I.    Awarding punitive damages, to the extent permitted by law, in an amount to be determined at trial;

      J.    Awarding Plaintiffs and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law and

      K.    Imposing an injunction preventing Defendants from engaging in the conduct described herein and requiring Defendants to restore the Plaintiffs' and class members accounts to status quo ante, as though the account was never treated as being in forbearance status; and

L.   Awarding such other and further relief as the Court may deem just and proper.

DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of any and all triable issues.

KAZEROUNI LAW GROUP, APC

Dated:  July 31, 2020

By:  s/ Abbas Kazerounian

Abbas Kazerounian, Esq.
ak@kazlg.com

Counsel for Plaintiffs and the Class

**Additional Counsel for Plaintiffs**
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
321 N Mall Drive, Suite R108
St. George, Utah 84790
Email: jason@kazlg.com
Phone: 800-400-6808
Fax: 800-520-5523

CLASS ACTION COMPLAINT