Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: 800.400.6808
Facsimile: 800.520.5523

Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional Counsel On Signature Page]

*Counsel for Plaintiffs & the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMARA GREEN, CHARLES JOHNSON and BRETT JACOB, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. 3:20-cv-05296-JCS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. O.C.G.A. §§ 10-1-390, *et seq.*<br>2. N.Y. Gen. Bus. Law § 340, *et seq.*<br>3. Cal. Civ. Code § 1785, *et. seq.*<br>4. Cal. Civ. Code § 1788, *et seq.*<br>5. Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Brett Jacob, Samara Green and Charles Johnson (collectively, "Plaintiffs"), individually and on behalf of the proposed Classes defined herein, bring this class action lawsuit for damages and injunctive relief resulting from the unlawful and deceitful actions of Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo" or the "Defendants"), as described herein.

## INTRODUCTION

1.      Wells Fargo is, among other things, a mortgage servicing company operating throughout the United States.

2.      As part of its mortgage servicing operations, Wells Fargo collects the monthly mortgage payments of borrowers (like Plaintiffs and the putative class members), and those funds are, in turn, applied to principal and interest, taxes and insurance as well as any other fees and charges that may have been assessed.

3.      Wells Fargo earns revenue from mortgage loan servicing in several ways.  For instance, Wells Fargo earns a per-loan servicing fee established by its servicing agreements with the owners of the loans that are entitled to payment of the principal and interest payments set forth in the mortgage loan instruments.

4.      Wells Fargo also earns "float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners.

5.      Additionally, Wells Fargo (as the loan servicer) retains all or part of certain fees it collects from borrowers, such as late charges, and for loans owned by various government sponsored enterprises ("GSEs"), like Ginnie Mae, Fannie Mae, and Freddie Mac, Wells Fargo earns fees for, among other things, filing incentive payments after loans are placed in forbearance.

6.      Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act in order to, among many other things, provide some relief to millions of American homeowners struggling to make their mortgage payments as a result of the economic difficulties

1    caused by the pandemic.

2        7.      The CARES Act instructed mortgagees and servicers to create

3    mortgage forbearance provisions for all federally-backed mortgages, which includes

4    loans serviced by Defendants on behalf of GSEs that acquire, securitize and insure

5    repayment of the majority of consumer mortgage loans in America.

6        8.      The CARES Act makes it abundantly clear that participation in a

7    COVID-19 mortgage forbearance program is entirely voluntary; that is, a mortgagor

8    must be informed of the various terms and conditions of the program and then make

9    a conscious decision to enter the program.

10       9.      According to the Consumer Financial Protection Bureau ("CFPB"),

11   before a bank servicing a loan can grant forbearance, it is supposed to request and to

12   receive an attestation of a COVID-19-related financial hardship from the borrower:

> REQUIREMENTS FOR SERVICERS.— (1) IN GENERAL.—***Upon receiving a request for forbearance from a borrower under subsection (b)***, ***the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency*** and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.[1]

---

[1]    https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf (last visited August 14, 2020) (emphasis added).

FIRST AMENDED CLASS ACTION COMPLAINT; Case No. 3:20-cv-05296-JD

10.     As detailed herein, Wells Fargo unilaterally and without consent, and certainly without requesting or receiving any financial hardship attestation, opted unwitting clients into its COVID-19 mortgage forbearance program.

11.     In addition, Wells Fargo put through secondary requests for forbearance on behalf of homeowners who had asked to participate in the program initially but who did not ask for extensions and no longer wanted to be in the forbearance program.

12.     Since the beginning of the COVID-19 pandemic, approximately 5.5 million homeowners have participated in a mortgage forbearance program, either knowingly or unknowingly.  Upon information and belief, Wells Fargo has deferred approximately 2.5 million payments and it is not clear whether Wells Fargo obtained the requisite financial attestation or consent for any of those "participants."[2]

13.     The requirement of a volitional act on the part of mortgagor participants is intentional as mortgage forbearance has serious consequences for homeowners, including an inability to obtain additional credit and/or to refinance any existing loans.

14.     As a result, those homeowners, including Plaintiffs, suffered damages, including, but not limited to, an inability to access credit, to refinance to lower interest rates (and away from particular mortgage servicers like Wells Fargo), and in dealing with the difficult situation of removing their mortgages from a program they did not want.

15.     Defendants benefit by unilaterally opting unwitting homeowners into its forbearance program in a number of ways, including retaining borrowers who might otherwise refinance their mortgages with other institutions.

16.     Interest rates are at all-time lows and many homeowners are seeking

---

[2]     *See, e.g.*,   https://www.nbcnews.com/business/personal-finance/more-wells-fargo-customers-say-bank-decided-pause-their-mortgage-n1234610   (last visited August 14, 2020).

to take advantage of these historically low rates by refinancing; if an account is placed into a forbearance program, those borrowers cannot typically refinance for many months, if not years, even after bringing the account current.

17.    The fact that homeowners were involuntarily enrolled in Wells Fargo's COVID-19 forbearance program and therefore cannot refinance their mortgages (and potentially away from Wells Fargo to another lender or servicer) for months and months after getting their account out of forbearance is a serious problem.

18.    According to recent articles published on Forbes' website entitled *Covid-19 is About to Make Refinancing a Home a Lot More Expensive* and *Your Mortgage Refinance Could Cost Thousands More Thanks to New Fee*, starting September 1, 2020, the cost of refinancing a mortgage is increasing as a result of economic risks associated with Covid-19.[3]

19.    Specifically, both Freddie Mac and Fannie Mae have recently announced a new mortgage refinancing fee of 0.5%. This refinancing fee will cost refinancing homeowners $500 for every $100,000 refinanced.[4]

20.    Defendants' actions are, unfortunately, yet another example of Wells Fargo opportunistic and illegal actions that seem to only benefit it financially without any regard for the needs of its customers *even in the throes of a catastrophic pandemic*.

---

[3]    https://www.forbes.com/sites/advisor/2020/08/13/your-mortgage-refinance-could-costs-thousands-more-thanks-to-new-fee/#f1c2c0c6ef7d (last visited August 16, 2020).

[4]    https://www.forbes.com/sites/robertberger/2020/08/15/covid-19-is-about-to-make-refinancing-a-home-a-lot-more-expensive/#3e36002a49a1 (last visited August 16, 2020) (stating that "[t]he fee will cost the average consumer $1,400 in additional fees").

21.     Defendants recently agreed to pay $3 Billion to resolve their potential criminal and civil liability stemming from their practice of pressuring employees to meet unrealistic sales goal that led thousands of employees to provide millions of accounts or products to customers under false pretenses or without consent, often by creating false records or misusing customers' identities.[5]

22.     The recent revelations regarding Defendants' practice of involuntary and without proper documentation putting homeowners' in unwanted forbearance program prompted the following statement from Senator Sherrod Brown of Ohio, the ranking Democrat on the Banking Committee:

> Once again it seems that Wells Fargo's sloppy service and shoddy management are hurting consumers. Wells Fargo should immediately address each of these complaints and make changes to ensure that no borrower finds themselves worse off from actions that their servicer takes without their consent or notice.[6]

23.     In addition to Senator Brown's public statement, Senators Elizabeth Warren of Massachusetts and Brian Schatz of Hawaii recently wrote a letter to the Chief Executive Officer of Wells Fargo seeking information regarding its now well-documented practice of putting mortgagors into forbearance programs without their consent.[7]

---

[5]     https://www.justice.gov/opa/pr/wells-fargo-agrees-pay-3-billion-resolve-criminal-and-civil-investigations-sales-practices (last visited August 14, 2020).

[6]     https://www.nbcnews.com/business/personal-finance/more-wells-fargo-customers-say-bank-decided-pause-their-mortgage-n1234610 (last visited August 14, 2020).

[7]     https://www.warren.senate.gov/imo/media/doc/2020.07.29%20Letter%20to%20Wells%20Fargo%20on%20Forbearance%20Filings.pdf (last visited August 14, 2020).

24.     The senators' July 29, 2020 letter stated that Wells Fargo "appears to be incapable of self-governance," and noted that reports of borrowers being placed in forbearance programs they did not want "raise even more questions about the inability of Wells Fargo and its leadership team to comply with the law and the needs of its customers."

25.     The letter, which called for a response by August 12, 2020, proclaimed that "if these reports are true, they represent one more addition to a long list of inexcusable actions by Wells Fargo at customers' expense" because such conduct can affect borrowers' credit by suggesting that they are not making payments even when they are and can prevent them from refinancing their home loans to take advantage of rock-bottom interest rates.

26.     Wells Fargo, for its part, has not denied these allegations; through its spokesperson Tom Goyda, Wells Fargo states that "[i]n the spirit of providing assistance, [it] may have misinterpreted customers' intentions in a small number of cases."[8]

27.     Plaintiffs allege as follows upon personal knowledge as to themselves and their own experiences and, as to all other matters, upon information and belief including due investigation conducted by their attorneys.

## **PARTIES**

28.     Plaintiff Samara Green is an individual who, at all relevant times, resided in Rockdale County, Georgia.

29.     Plaintiff Brett Jacob is an individual who, at all relevant times, resided in Nassau County, New York.

30.     Plaintiff Charles Johnson is an individual who, at all relevant times, resided in Riverside County, California.

---

[8]     https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited August 14, 2020).

31.     Defendant Wells Fargo & Company is a Delaware corporation headquartered in San Francisco, California.

32.     Defendant Wells Fargo & Company is a diversified financial services company that provides banking, insurance, investments, mortgage banking and other products and services to consumers, businesses and other institutions.

33.     Defendant Wells Fargo & Company is reported to have approximately $1.9 trillion in assets.

34.     Defendant Wells Fargo & Company is the parent corporation of Defendant Wells Fargo Bank, N.A.

35.     Upon information and belief, Defendant Wells Fargo & Company exercises specific and financial control over the operations of Wells Fargo Bank, N.A., dictates the policies, procedures and practices of Defendant Wells Fargo Bank N.A., exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the ill-gotten gains described herein.

36.     Defendant Wells Fargo Bank, N.A. is a national association that is headquartered in South Dakota.

37.     Defendant Wells Fargo Bank, N.A. conducts mortgage servicing operations through its Wells Fargo Home Mortgage division, which is headquartered in Des Moines, Iowa.

38.     Plaintiffs' mortgages are currently serviced by Defendant Wells Fargo Bank, N.A.

## JURISDICTION & VENUE

39.     Subject matter jurisdiction exists in this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because certain Plaintiffs are residents of different states (Georgia and New York, respectively) than that of Defendant Wells Fargo & Company who has its principal place of businesses in California and is incorporated in Delaware and Defendant Wells Fargo Bank, N.A.,

1    which has its principal place of business in South Dakota.

2    40.    When aggregated among a proposed class in the thousands, the

3    amount in controversy exceeds $5,000,000—exclusive of interest and costs—the

4    threshold for federal court jurisdiction.

5    41.    Both diversity jurisdiction and the damages requirement under CAFA

6    are satisfied, and this Court therefore has subject matter jurisdiction.

7    42.    This Court has personal jurisdiction over Defendant Wells Fargo &

8    Company which has its principal place of business in San Francisco, California and

9    is authorized to do business in California, transacts business in California and

10   maintains sufficient minimum contacts in California.

11   43.    This Court has personal jurisdiction over Defendant Wells Fargo

12   Bank, N.A., because it is authorized to do business in California, transacts business

13   in California and maintains sufficient minimum contacts in California.

14   44.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and

15   (c) because a substantial part of the events giving rise to these claims occurred in

16   this District, Defendants regularly conduct business in this District and Defendant

17   Wells Fargo & Company has its principal place of business in this District.

18                              **FACTUAL ALLEGATIONS**

19   **I.    The Federal Government Passes the CARES Act to Help with the
20          Economic Harm Caused by the COVID-19 Pandemic.**

21   45.    On March 11, 2020, the World Health Organization ("WHO")

22   declared the COVID-19 outbreak a global pandemic.

23   46.    On March 13, 2020, the President issued the Coronavirus Disease

24   2019 (COVID-19) Emergency Declaration, which declared that the COVID-19

25   pandemic was of "sufficient severity and magnitude to warrant an emergency

26   declaration for all states, territories and the District of Columbia."

27   47.    The economic fallout from COVID-19 was immediate and continues

28   to be considerable.

48.     On March 25, 2020, in response to the economic damage beginning to be felt by Americans throughout the country, the United States Senate passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act.

49.     The CARES Act was passed by the House of Representatives the following day and signed into law on March 27, 2020. See generally CARES Act, Public Law No. 116-136.

50.     The CARES Act is the single-largest economic stimulus bill in United States' history, allocating approximately $2.2 trillion of support to individuals and business affected by the COVID-19 pandemic.

## II.     The CARES Act Provides Relief to American Homeowners with Government-backed Mortgages.

51.     A substantial part of the coronavirus aid package was designed to assist American homeowners with federally backed mortgages who were in distress as a result of the COVID-19 pandemic.

52.     First, the CARES Act assisted American homeowners with Government Sponsored Enterprise ("GSE") backed mortgages by prohibiting their lenders and mortgage services from beginning a judicial or non-judicial foreclosure or from finalizing a foreclosure judgment or sale through at least August 31, 2020.

53.     Second, and most relevant to this action, the CARES Act provided homeowners with GSE-backed loans experiencing financial hardships because of COVID-19 with the option to request up to 180 days of forbearance on their mortgage.

54.     Specifically, Section 4022(b) provides, in relevant part, that:

> (1)     IN GENERAL.—During the covered period [beginning February 15, 2020 and ending on June 30, 2020], a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency *may request* forbearance on the Federally backed mortgage loan, regardless of delinquency status, by—

(A) submitting a request to the borrower's servicer and

(B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.

(2) DURATION OF FORBEARANCE.—*Upon a request by a borrower for forbearance* under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days *at the request of the borrower*, provided that, *at the borrower's request*, either the initial or extended period of forbearance may be shortened.

*See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat. 281, § 4022(b) (emphasis added).

55. Section 4022(c) provides, in relevant part, that:

*Upon receiving a request for forbearance from a borrower under subsection (b),* the servicer shall *with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency* and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provided the forbearance up to 180 days, which may be extended for an additional period of up to 180 days *at the request of the borrower*, provided that, *the borrower's request for an extension* is made during the covered period, and, *at the borrower's request*, either the initial or extended period of forbearance may be shortened.

*Id.*, § 4022(c) (emphasis added).

56. These provisions make it abundantly clear that participation in a mortgagee's or servicer's mortgage COVID-19 forbearance program is voluntary and to be initiated only at the request of the mortgagor clients.

57.     As explained by the CFPB, a forbearance is "when [] mortgage servicer[s] or lender[s] allow[ mortgagors] to pause (suspend), or reduce [their] mortgage payments for a limited period of time while [they] regain [their] financial footing."[9]

58.     Notably, while "the CARES Act provides many homeowners with the right to have all mortgage payments completely paused for a period of time," "[f]orbearance doesn't mean [mortgagors'] payments are forgiven or erased. [Rather, mortgagors] are still required to repay any missed or reduced payments in the future, which in most cases may be repaid over time."[10]

59.     The CARES Act provided for an extension of the forbearance period (for a total of up to 360 days) for homeowners that continued to experience difficulty in paying their mortgages once their initial 180-day term expired.[11]

60.     In order for mortgagors to avail themselves of the COVID-19 mortgage forbearance option, they were instructed to contact their loan servicer to obtain information and, if appropriate, request forbearance.[12]

---

[9] https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/mortgage-relief/ (last visited August 14, 2020).

[10] *Id.*

[11] https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/after-you-receive-relief/ (stating that "[i] f you still face financial hardship, you can request a forbearance extension. Under the CARES Act, if you have a federally or GSE-backed mortgage, you also can request and obtain an extension of the forbearance for up to an additional 180 days) (last visited August 14, 2020).

[12] *See* https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/request-forbearance-or-mortgage-relief/ (last visited August 14, 2020).

III.   **The Implementation of the CARES Act is Met with Confusion & Uncertainty.**

61.   While the CARES Act was passed quickly and with laudable intentions, there has been a tremendous amount of consumer confusion around many aspects of the Act including the forbearance program.

62.   Some of the terms are relatively straightforward in that lenders are not permitted to report forborne payments to the credit bureaus, which means that borrowers who request forbearance are not supposed to see any impact on their credit scores as a result of their participation in forbearance programs.

63.   Additionally, the initial term of the mortgage forbearance program was designed to be 180 days and, after that term expires, lenders were instructed to work with borrowers to—upon request by the homeowners—extend the forbearance or establish a repayment plan.[13]

64.   Leaving aside the issue of whether mortgagors are even aware that they are in a mortgage forbearance program, the provision that has caused the most confusion is that participating mortgagors often do not know if they have to get their mortgage current at the conclusion of the forbearance period or how their lender and/or servicer will treat the deferred payments.

65.   Fannie Mae and Freddie Mac attempted to address the confusion attendant to the post-CARES Act forbearance loss mitigation landscape when they introduced the "COVID-19 Payment Deferral" option with Lender Letter (LL-2020-

_____

[13]   *See*   https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#FAQ5 (stating that "[f]orbearance in the CARES Act is broken down into two pieces; an *initial* period and an *additional* period.  For the initial period, you may notify your mortgage servicer that you are financially affected by the COVID-19 emergency and request up to 180 days of forbearance. For the additional period, you may notify your mortgage servicer that you are still financially affected by the COVID-19 emergency and request up to 180 additional days of forbearance.") (last visited August 14, 2020).

07) and Bulletin 2020-15.[14]

66.     The COVID-19 Payment Deferral instructs that all forborne payments (up to 12 months) are to be placed into a non-interest bearing balance to be paid back at the end of the loan term.

67.     The COVID-19 Payment Deferral brought Fannie Mae and Freddie Mac in line with the United States Department of Housing and Urban Development's ("HUD") COVID-19 National Emergency Standalone Partial Claim option, which provides borrowers with a junior mortgage (zero additional interest, no fees) not payable until the mortgage is paid off, comprised of the total amount of payments missed during a CARES Act forbearance period.[15]

68.     Although various government entities attempted to clarify the law, the mortgagees and servicers fail to comply as evidenced by, among other things, a report published (in late April) by HUD's Office of Inspector General ("OIG"), which conducted a study of the top 30 mortgage servicers 22 days after the CARES Act was enacted.

69.     That study, entitled Some Mortgage Loan Servicers' Websites Offer Information about CARES Act Loan Forbearance That Is Incomplete, Inconsistent, Dated, and Unclear, analyzed the information that mortgagees and servicers were providing to borrowers regarding forbearance.[16]

---

[14]     Lender Letter 2020-07 is available here: https://singlefamily.fanniemae.com/media/22916/display and Bulletin 2020-15 is available here: https://guide.freddiemac.com/app/guide/bulletin/2020-15 (last visited August 14, 2020).

[15]     HUD's Mortgagee Letter 2020-06 is available here: https://www.hud.gov/sites/dfiles/OCHCO/documents/20-06hsngml.pdf (last visited August 14, 2020).

[16]     The report is available here: https://www.hudoig.gov/sites/default/files/2020-04/Single%20Family%20Mortgage%20Forbearance%20Brief.pdf (last visited August 14, 2020).

70.     HUD's OIG ultimately concluded that information from mortgagees and servicers was "incomplete, inconsistent, dated, and unclear" because, among other things, not all mortgage servicer websites provided readily accessible information, the information about the duration of forbearance was inconsistent; the information was not brought up to date to meet the mandates of the final CARES Act; and/or the servicer "gave the impression" that a lump sum payment was necessary at the end of the forbearance.

71.     The CFPB's May 2020 Complaint Bulletin, covering complaints mentioning coronavirus keywords, echoed HUD OIG findings and the House Financial Services Committee's criticisms, observing, among common complaints, that consumers were unable to reach customer service representatives and faced long hold times, and were informed by their mortgage servicers that they would have to repay 90-day forbearances in a lump sum at the end of the 90-day period.[17]

## III.     Approximately 4.58 Million Homeowners with Federally-backed Loans Are in a Forbearance Program, Many of them Unwittingly.

72.     As of June 30, 4.58 million homeowners are in COVID-19 related forbearance plans, representing 8.6% of all active mortgages.[18]

73.     Some 6.8% of all GSE-backed loans and 12.3% of all FHA/VA loans are currently in forbearance plans.[19]

_____

[17]     The CFPB's May Bulletin is accessible here: https://www.consumerfinance.gov/about-us/newsroom/cfpb-issues-consumer-complaint-bulletin/ and the Report, entitled *Complaint Bulletin, Complaints Mentioning Coronavirus Keywords*, is accessible here: https://files.consumerfinance.gov/f/documents/cfpb_complaint-bulletin_coronavirus-complaints.pdf (last visited August 14, 2020).

[18]     *See* https://www.cnbc.com/2020/07/03/loans-in-coronavirus-mortgage-bailouts-see-largest-weekly-decline-yet.html (last visited August 14, 2020).

[19]     *See* https://www.blackknightinc.com/blog-posts/forbearance-volumes-reverse-course-for-largest-decline-yet/ (last visited August 14, 2020).

74.    Federally backed mortgages (including GSEs Freddie Mac and Fannie Mae) constitute 62 percent of all first lien mortgages.[20]

75.    Mortgages owned by private lenders, such as banks, are not included in the relief proscribed by the CARES Act.

76.    About 30%, or roughly 14.5 million U.S. mortgages, are privately owned and not backed by any federal agency.[21]

77.    Approximately 11% of these privately-held mortgages remain in some type of forbearance or deferment program.



78.    Wells Fargo has stated publicly that it has deferred 2.5 million payments for consumer and small business customers since the start of the pandemic.[22]

---

[20]    *See*  https://www.americanactionforum.org/insight/the-cares-act-and-mortgage-servicers/#ixzz6SxUvL79W (last visited August 14, 2020).

[21]    *See*  https://www.cnbc.com/2020/07/15/privately-held-mortgage-forbearance-may-be-difficult-for-americans-to-navigate.html (last visited August 14, 2020).

[22]    *See*  https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited August 14, 2020).

**IV.    Wells Fargo Unilaterally Opted Homeowners into Forbearance Program and Extended Homeowners' Forbearance Without Their Consent**

79.    Since the passage of the CARES Act in late March, millions of homeowners across the country have attempted to obtain information from their mortgage servicers and lenders as to the specifics of their COVID-19 forbearance program.[23]

80.    As numerous media reports have detailed, many servicers unilaterally put borrowers into their mortgage forbearance program despite no clear indication of consent.[24]

81.    Thousands of homeowners were put into mortgage forbearance programs they did not request or had their forbearance period extended for an additional period of time without their consent, causing substantial problems for those homeowners.

82.    Being in forbearance prevents those homeowners from taking out new home loans or refinancing their existing mortgages (not to mention obtaining any additional credit).

83.    As told by a Wells Fargo mortgage servicer client, it is virtually impossible to obtain any form of credit for up to a year after a forbearance program has concluded:

> the note on his credit report saying the loan is in forbearance makes it impossible for him to refinance. Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the Department of Veterans Affairs, fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a

---

[23]    *Homeowners are getting mortgage relief they didn't want*, Anna Bahney, May 2020 (https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[24]    *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited August 14, 2020).

loan in forbearance to either refinance or obtain a new
loan until one year after the loan payments are up to date
again.[25]

84.     When reached for comment, Wells Fargo stated: "[w]e encourage
customers to continue making their payments if they can but are granting an
immediate three-month payment suspension for any Wells Fargo Home Lending
mortgage or home equity customer who requests assistance. For customers who
contact us to take advantage of a payment suspension, we won't report past-due
status to the consumer reporting agencies or charge late fees during the suspension
period."[26]

85.     Wells Fargo continued by stating that "[c]ustomers who reach us by
telephone will get an immediate verbal confirmation of their three-month payment
suspension. Because our contact centers are experiencing significant call volumes,
we encourage mortgage customers to log into their account on WellsFargo.com and
click on the banner in the mortgage account, follow the easy steps to submit request
for payment relief, and receive immediate confirmation. In either case, customers
will receive a confirmation letter within 7-10 days after our initial response."[27]

--------

[25]     *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited August 14, 2020) (stating that "It also puts barriers in front of homeowners who could really benefit now from refinancing and saving on their monthly payments. Servicers are swamped with those requests as well. Applications to refinance a home loan are currently up more than 200% from a year ago").

[26]     *See*     https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5     (last     visited August 14, 2020).

[27]     *See*     https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5     (last     visited August 14, 2020).

86.    Wells Fargo has acknowledged that merely inquiring about forbearance options should not result in a borrower's unwitting entry into the program.

87.    Specifically, Tom Goyda, a Wells Fargo consumer lending spokesperson admitted that, "[j]ust asking about a forbearance should not result in a forbearance being applied."[28]

88.    Despite these public statements, Wells Fargo has publicly acknowledged unilaterally opting Chapter 13 debtors into its COVID-19 mortgage forbearance program.

89.    According to a recent media report, Wells Fargo monitored the Chapter 13 bankruptcy dockets of its debtor clients and unilaterally opted them into its mortgage forbearance program.[29]

90.    That article, entitled *Troy Harlow has always made sure to pay his mortgage on time Wells Fargo had other plans for him*, details the plight of numerous borrowers who had been unwittingly enrolled in Wells Fargo's mortgage forbearance program:

> None of the borrowers in the lawsuit who were contacted by NBC News told the bank that they'd been affected by COVID-19, and **none had requested the bank's assistance because of it. Nor had they requested loan modifications when Wells Fargo claimed they wanted forbearance.** In addition, none of the borrowers or their attorneys say they were contacted by Wells Fargo.

---

[28]    *See*    https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[29]    *See* https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited August 14, 2020).

> Asked about the discrepancies, Wells Fargo said that because it had seen references to COVID-19 in the borrowers' court filings, it provided forbearance.[30]

91.    When reached for comment, Wells Fargo did not deny the practice of unilaterally enrolling unwitting persons to its mortgage forbearance program:

> During this unprecedented time, we've focused on ensuring that our customers who need assistance receive the benefits of available relief programs, the statement said.
>
> In the early days of the pandemic, we provided immediate payment relief to customers in bankruptcy if a review of their court filings indicated they were impacted by COVID-19 or if they had a loan modification review in process.
>
> In those cases, we notified the customers or their attorneys and filed a notice with the court. We followed up with customers in these circumstances after some raised questions and, in the majority of cases, those we have contacted wanted the payment relief. If a customer does not want a forbearance, we remove it and notify the bankruptcy courts.[31]

92.    The Wells Fargo spokeswoman declined to say whether the bank has benefited financially from making unrequested forbearance filings.[32]

93.    But, upon information and belief, Wells Fargo is compensated financially by the various federal agencies on whose behalf it services borrowers' loans when it files forbearance notices and when it completes loan retention workout

---

[30]    *See*    https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-made-sure-pay-his-mortgage-time-n1233635 (last visited August 14, 2020) (emphasis added).

[31]    *Id.* (emphasis added).

[32]    *Id.*

options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

94.    Upon information and belief, for each loan placed into forbearance that Wells Fargo subsequently modifies in accordance with Fannie Mae and Freddie Mac's matrix for loan retention workout options, Wells Fargo receives an incentive fee of up to $1,500.[33]

95.    Upon information and belief, for each loan placed into forbearance for which Wells Fargo subsequently defers repayment of some or all of the forborne payments until loan maturity in accordance with Fannie Mae and Freddie Mac's matrix for loan retention workout options, Wells Fargo receives an incentive fee of $500.

96.    Upon information and belief, for each loan placed into forbearance for which Wells Fargo enters into a completed repayment plan in accordance with Fannie Mae and Freddie Mac's matrix for loan retention options, Wells Fargo receives an incentive fee of $500.[34]

97.    Upon information and belief, Wells Fargo also receives servicing income for the loans it services, and Plaintiffs are informed and believe and therefore allege that Wells Fargo is incentivized to modify its customers' mortgage loans following a CARES Act forbearance in a way that extends the loan's term and lowers the borrower's monthly mortgage payment in order to prevent "run off" of loan servicing rights, which occurs when borrowers sell their homes or refinance their mortgages.

98.    Implementing forbearance plans without customer approval is

---

[33]   *See*   https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#73c99373edc5   (last   visited August 14, 2020).

[34]   *Id.*

1    reminiscent of other troubling practices at Wells Fargo in recent years.[35]

2        99.    Starting next month, Fannie Mae has new rules benefiting loan servicers

3    like Wells Fargo whose customers are in forbearance.[36] Normally, banks handling

4    home loans held by Fannie Mae must continue forwarding borrowers' mortgage

5    payments to the government entity, even when they stop paying.[37]

6        100.   But under the new rules, banks can stop advancing Fannie Mae

7    borrowers' mortgage payments after four months if the borrowers have stopped

8    paying because they are in forbearance programs.[38]

9    **V.    Impacts of Unwanted Forbearance on Consumers.**

10       101.   Wells Fargo's practice of unilaterally opting mortgagors into unwanted

11   forbearance program is not limited to its Chapter 13 debtor clients.

12       102.   Rather, as detailed extensively herein, many homeowners were put into

13   forbearance programs they did not want which has caused injury to those

14   homeowners.[39]

15       103.   Even if mortgagees do not report forborne accounts as delinquent, there

16   are nonetheless many practical and immediate impacts of participating in a mortgage

17   forbearance program; chief among them is that participation in a forbearance program

18   prohibits homeowners from taking out new loans or refinancing their existing

19   _____

20   [35]  *See*    https://www.nbcnews.com/news/all/wells-fargo-pay-3-billion-over-fake-

21   account-scandal-n1140541 (last visited August 14, 2020).

22   [36]   https://www.nbcnews.com/business/personal-finance/troy-harlow-has-always-

23   made-sure-pay-his-mortgage-time-n1233635 (last visited August 14, 2020).

24   [37]   *Id.*

25

26   [38]   *Id.*

27   [39]   *See*        https://www.cnn.com/2020/05/20/success/mortgage-forbearance-

28   homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

mortgages.[40]

104.    Wells Fargo has made note on the reports they send to credit reporting agencies that the homeowners who they have placed in forbearance—including those who never requested it—have suspended their mortgage payments.[41]

105.    Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the Department of Veterans Affairs, fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a loan in forbearance to either refinance or to obtain a new loan until one year after the loan payments are up to date again.[42]

## VI.    Wells Fargo's Practice of Unilaterally Opting Consumers Into a Forbearance Program Prompts Hundreds of Consumer Complaints.

106.    The lack of clarity around Wells Fargo's mortgage forbearance programs has caused great stress to thousands of homeowners and led to many consumer complaints.

107.    Frustration seeps through long threads on social media channels populated with mortgage borrowers unnerved by, among other things, their inability to reach lenders over the phone and upset with the forbearance assistance they are offered once someone answers their calls.[43]

---

[40]    The Cares Act is clear that participation in a forbearance program should not negatively impact mortgagee's credit scores. According to the CARES Act, if a mortgagee is in forbearance because of the pandemic, their loan status is to be reported as current on payments.

[41]    *See* https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited August 14, 2020).

[42]    *Id.*

[43]    https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

108.    Complaints filed with the CFPB have risen dramatically since the beginning of the COVID-19 outbreak, and many of those come from homeowners who complain that they were placed in forbearance without requesting it.[44]

109.    Oversight of the forbearance program is woefully inadequate, so it's unsurprising that the biggest coronavirus problems are related to mortgages," said Mike Litt, the consumer campaign director at U.S. PIRG.[45]

110.    A representative complaint of a person who filed a complaint with the CFPB noted that Wells Fargo unilaterally opted her into a mortgage forbearance program without her consent:

> I contacted my mortgage servicer . . . for informational purposes only, to see what programs they were offering during the COVID-19 pandemic . . . . I stated I did NOT want to be on a forbearance plan.
>
> The stress of the situation has affected my physical and mental well-being, strained my personal relationships as well as the ability to do my job.  I have spent hours on the phone, and writing letters . . . I wonder, how many others this is happening to?[46]

111.    A recent article in Forbes details the experience of Morgan Davis, a furloughed clothing designer, who called Wells Fargo to ask for help with her FHA loan.[47]

---

[44]    https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[45]    *Id.*

[46]    https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

[47]    https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

- 24 -

112.    According to the borrower, Wells Fargo offered to suspend her mortgage for three payments without penalty, but Ms. Davis declined because "at the end of those three months, all my mortgage payments would be due at once."[48]

113.    Unbeknownst to Ms. David and against her wishes, Wells Fargo unilaterally opted her into a mortgage forbearance program.

114.    Ms. Davis only found out that she was entered into the program when she attempted to pay her next month's mortgage and was informed that her "Wells Fargo checking and savings accounts are ineligible to pay [her] Wells Fargo mortgage."

115.    According to the Forbes article, Ms. Davis also received a letter confirming the receipt of her loan modification request, a request she says she never made.[49]

116.    Similarly, another Wells Fargo customer, Tammi Wilson, claims her mortgage was placed in forbearance after she clicked a link to coronavirus relief information on the bank's website and provided her contact information to receive related program materials.[50]

117.    According to a recent article, *Wells Fargo says it 'misinterpreted customers' intentions' in some forbearance cases*, when Ms. Wilson later discovered that she no longer had an active account when she logged on to make a payment on her loan:

---

[48] https://www.forbes.com/sites/dimawilliams/2020/04/03/borrowers-seeking-mortgage-forbearance-hit-ambiguity-snafus/#7e6d2be8edc5 (last visited August 14, 2020).

[49] *Id.*

[50] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited August 14, 2020).

> I click this button and next thing I know, I'm getting a thing that says I'm deferred and I can't reverse something I didn't even want. If you're going to help people, there is a super simple first step — just ask, 'Do you need our help?' [51]

118.   Another mortgagor similarly called Wells Fargo to get information and later found out his mortgage was in forbearance.[52]

119.   The borrower said he sent an email to Wells Fargo, which services his loan, because he "was asking to be educated on what [his] options were [but s]omeone put me in this and never told me what it was."

120.   As with Ms. Davis and Ms. Wilson, when this Wells Fargo servicer client went to make his next payment, he was informed that he could not because there was no "eligible account to make the payment on."[53]

121.   When this Wells Fargo customer attempted to refinance (in order to take advantage of record low mortgage rates), his mortgage broker informed him that the loan was in forbearance, and he was therefore unable to refinance.

122.   The borrower again contacted Wells Fargo and asked to be removed from forbearance. That was April 23, and he says his loan is still listed as in forbearance.

123.   Similarly, a recent CNN.com article, entitled Homeowners are getting mortgage relief they didn't want, details additional instances of the problem:

> 'I never asked to be in the program,' said D.J. Stavropoulos, a real estate agent in Atlanta who said he called his mortgage servicer, Wells Fargo, in March just

---

[51]   *Id.*

[52]   https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html

[53]   *Id.*

to get information about how a forbearance would work.

Nonetheless, at the beginning of May, he received a letter from Wells Fargo confirming that his loan was in forbearance.

'I was alarmed they were doing this behind my back,' Stavropoulos said. "I think the average person is as confused as I was and may be surprised to find they are in forbearance and not know it."[54]

124.   Unfortunately, these Wells Fargo clients' stories are not isolated incidents.

125.   Rather, the CFPB website is replete with additional instances of persons who were involuntarily and unwittingly opted into a mortgage forbearance program with Wells Fargo.

126.   For instance, this Wells Fargo customer was involuntarily placed into forbearance twice:

My account with Wells Fargo was placed in forbearance or trial plan by mistake in XXXX, twice. First week of XX/XX/2020, the account goes into forbearance, payments are not accepted based on a problem with Wells Fargo systems and then the account goes out of the plan. Later, at the end of XXXX the account goes again in forbearance and I had to call Wells Fargo once again to get it removed. They finally did this on XXXX XXXX. I spoke with several representatives, the last one being XXXX XXXX who after several phones told me on XX/XX/XXXX that he got approval to issue a letter stating that the account was placed in forbearance by mistake and that he was only waiting for the legal department to approve the language of such letter. After waiting for a week, I spoke again to XXXX. XXXX on XX/XX/XXXX, who informed of the decision by Wells Fargo to not provide such letter. This situation has

---

[54]   https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited August 14, 2020).

generated significant issues on my side, as other lenders are now reluctant to provide any financing until the situation gets resolved or some time goes by before they are willing to look at my applications again. The major issue here, other than the account being inadvertently placed in forbearance is that Wells Fargo continue to mislead customers telling them that accounts entering forbearance during covid19 will not impact credit scores, but they massively fail in disclosing that credit score agencies will still be informed about the situation and that a note on the report will indicate that at some point, the account was in forbearance. Even if this does not affect scores, it DOES affect customers with an impeccable record of never having missed a single payment or liability in their whole lives. Wells Fargo continue with their old practice of misleading customers. A smart lender will always look through scores and if there is anything else on the report that could be a cause for concern, then it's reasonable to believe that a note on the report such as the one Wells Fargo has now created on mine, could become a big issue to me in the future.[55]

127.    Another Wells Fargo customer called to obtain information regarding the mortgage forbearance program and was unwittingly opted into the program ultimately damaging his credit score:

I called Wells Fargo for information about what to do With mortgage during covid pandemic being wife and I lost our employment during New York State pause order. I was offered a forbearance agreement or deferral that I was assured I would receive paper work on and it would not be reported to credit reporting agency during this time of national pandemic. I was reluctant to go into anything but requested information be sent to me. Credit report indicates In forbearance it also indicates last payment received was XXXX but I have paid XXXX XXXX and XXXX. This has negatively affected My

---

[55]    https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3678207 (last visited August 14, 2020).

credit with all credit reporting agencies. I did not sign anything to agree to forbearance and subsequent calls to them I stressed that Im paying my mortgage and dont want a forbearance. Instead they listed it on my credit without authorization. When I called them they said it was an error n they are working on it. They ruined my wife and my credit.[56]

128.    These Wells Fargo clients were likewise opted into Wells Fargo's mortgage forbearance program without their consent:

- Wells Fargo put me into CARES act forbearance without my consent. I was unable to make a payment online like I usually do. I called and was on hold for an hour but finally was able to talk to a rep, named XXXX. I told them they put me into forbearance without my consent. He apologized and said that the system is like a " hair trigger " even though I did nothing to start a forbearance, I've never missed a payment, have no reason to apply for forbearance and am able to make payments. The rep said he would reverse the forbearance but that it would take 2-3 days and took my payment over the phone. This took place on XX/XX/20. I have recently been looking into refinancing with rates so low. I get an email today from my new potential lender stating that my credit report, which they pulled XX/XX/20, showed that my current mortgage with Wells Fargo is in forbearance, labeled " payment deferred ". This may affect my ability to refinance my home. Also, Wells Fargo is contacting me about refinancing. On the XXXX website and under the CARES act it states: As part of the recently enacted Coronavirus Aid, Relief and Economic Security ( CARES ) Act, mortgage accounts in forbearance as a result of COVID-19 cannot be reported negatively to the credit bureaus by lenders. The wrongs are in apply forbearance to my

---

[56]                    https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3662758 (last visited August 14, 2020).

mortgage without verbal OR written consent and the fact that they reported this forbearance to the credit bureaus. And now on my account showing the payment I made on the phone for my XXXX payment is deemed " unapplied funds " with the description on their website : We have received funds that are not sufficient to make a full payment on your loan. If we are automatically withdrawing your payments based on a recurring weekly, bi-weekly, or semi-monthly schedule, your funds remain unapplied until we have received an amount sufficient to make a full monthly payment for you. If you are on a repayment plan and have made an agreement to make payment amounts that are different from your regular monthly payment, some funds may be unapplied. This is infuriating and could cost me ~ $ XXXX in interest savings and a decrease in previously exceptional credit of XXXX.[57]

- Due to covid19 I asked for information on the wells Fargo forbearance process on my mortgage. I was told I would receive information by mail. When I received my letter I was told that I was eligible and to go online to confirm and cancel my automatic payments. Also it stated that if I didn't need the assistance no action was needed I could disregard and nothing more will be done. XX/XX/XXXX I noticed my payment didnt get drafted. Called XX/XX/XXXX. Was told I was in the forbearance program. I never requested this to be done, only asked for information. I requested that day and twice since requested but it has not processed to be removed from the program.[58]

- Due to a job loss, I reached out to Wells Fargo and asked for information on their Covid-19 mortgage

[57]   https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3663700 (last visited August 14, 2020).

[58]   https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3661535 (last visited August 14, 2020).

relief program. To clarify, I only asked for information on the program. The representative on the phone stated that an information packet would be mailed to me. About a week later, a letter arrived from Wells Fargo stating that they are " confirming short term payment relief for the account. " This was not what I had requested. In addition, the letter states " We won't report this account to consumer reporting agencies. " It has now come to light that Wells Fargo has put a forbearance on the mortgage, preventing any ability to refinance. I am current on my mortgage payments and did not want to be part of their relief program, but now I have a forbearance blemish on my mortgage.[59]

## FACTS SPECIFIC TO REPRESENTATIVE PLAINTIFFS

**I.     Facts Specific to Plaintiff Brett Jacob**

129.     Plaintiff Brett Jacob has a mortgage serviced by Wells Fargo.

130.     Wells Fargo collects payments and performs services for Mr. Jacob, the borrower.

131.     On or about March 16, 2020, Mr. Jacob called Wells Fargo and asked that his mortgage payments no longer be automatically debited from his bank account.

132.     Mr. Jacob requested that he be permitted to make payments at a time and in a manner of his own choosing.  Wells Fargo honored Mr. Jacob's request and, a few days later, Mr. Jacob received a letter from Wells Fargo dated March 20, 2020 confirming that Wells Fargo had "completed your request to suspend your automatic mortgage payments."

133.     However, approximately one week later, Mr. Jacob received a second

---

[59]     https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3658898 (last visited August 14, 2020).

letter from Wells Fargo dated March 26, 2020.  This letter informed Mr. Jacob, much to his surprise, that Wells Fargo had placed his mortgage into short-term payment relief—or forbearance— for six months.  The letter stated that his monthly mortgage obligations had been suspended until October 1, 2020.

134.    Mr. Jacob never requested that Wells Fargo place his mortgage into forbearance.

135.    Since being placed in forbearance, Mr. Jacob has tried to make mortgage payments, but Wells Fargo suspended his online payment option.

136.    Further, though Wells Fargo assures its customers otherwise, the forbearance that he did not request is reflected on his credit report.

137.    After Wells Fargo placed him in forbearance, Mr. Jacob attempted to secure a small-business loan but was denied, at least in part, because the lender pulled his credit report and saw that his mortgage had been placed in forbearance.

138.    In addition, Mr. Jacob's attempt to refinance his mortgage and to obtain a lower interest rate on his mortgage was denied because Wells Fargo placed his mortgage into forbearance without his consent.

139.    In short, Mr. Jacob did not request a forbearance of his mortgage loan payment obligations, did not contact Wells Fargo about a forbearance and did not—and does not—want a forbearance of his mortgage payment obligations.

140.    Wells Fargo placed Mr. Jacob's loan in forbearance without his consent, and incorrectly reported this to credit reporting agencies such that it appears on Mr. Jacob's credit report.

## II.    Facts Specific to Plaintiff Samara Green

141.    Plaintiff Samara Green has a mortgage serviced by Wells Fargo.

142.    Wells Fargo collects payments and performs services for Ms. Green, the borrower.

143.    On or about June 15, 2020, a representative from Wells Fargo called

Ms. Green to address concerns Ms. Green had about her escrow payments. During this call, the Wells Fargo representative explained to Ms. Green about the option of placing her mortgage in forbearance.

144.    Ms. Green told the Wells Fargo representative that she was not interested in Wells Fargo's forbearance program.

145.    Prior to the June 15, 2020 phone call, Ms. Green had already made a mortgage payment to Wells Fargo on June 12, 2020.

146.    However, unbeknownst to Ms. Green, her June 12, 2020 payment was never applied to her mortgage or her escrow accounts because Wells Fargo placed her mortgage into forbearance prior to the application of her payment and without her knowledge or consent.

147.    On or around June 26, 2020 Ms. Green called Wells Fargo again to further inquire about fees and the application of escrow payments. During this phone call, the Wells Fargo representative informed Ms. Green that her mortgage had been placed in forbearance.

148.    Ms. Green informed the representative that she had never requested or consented to a forbearance on her mortgage, that Wells Fargo had acted without her knowledge or consent, and demanded that her account be taken out of forbearance.

149.    Ms. Green received a letter from Wells Fargo dated July 1, 2020 which memorialized this conversation. As the letter recounted, Wells Fargo placed Ms. Green's mortgage into forbearance though she "did not request this."

150.    Wells Fargo admits in the letter that though Ms. Green called Wells Fargo to discuss suspending her late payments, Wells Fargo instead suspended all her mortgage payments.

151.    Wells Fargo never informed Ms. Green, either on the June 26, 2020 phone call or in the July 1, 2020 letter, that Wells Fargo failed to apply her June 12, 2020 payment to her mortgage.

152.     On or about July 15, 2020, Ms. Green went to a Wells Fargo bank branch local to her in order to make another mortgage payment to Wells Fargo.

153.     However, when Ms. Green spoke with the Wells Fargo representative at the bank branch, she was told that the amount due on her mortgage was over $3,500, that her prior June payment had not been applied to her mortgage or her escrow, and that her mortgage had been placed in forbearance.

154.     After Ms. Green's visit to the Wells Fargo branch, she immediately called Wells Fargo and spoke to a representative.  The Wells Fargo representative confirmed that Ms. Green's mortgage payment had not been applied to her mortgage or her escrow because she had been placed in forbearance.  The Wells Fargo representative told Ms. Green that her payment had been placed in an "unapplied fund" and that those payments would be reversed because they could not be applied to her mortgage or escrow while she was in forbearance.

155.     Wells Fargo placed Ms. Green's loan in forbearance without her consent, and incorrectly reported this to credit reporting agencies such that it appears on Ms. Green's credit report.

156.     Because Wells Fargo failed to properly apply her June 12, 2020 payment, Wells Fargo reported to the Credit Reporting Agencies that Ms. Green was 30 days late on her mortgage for the month of June 2020.

157.     Ms. Green did not request a forbearance of her mortgage loan payment obligations, did not contact Wells Fargo about a forbearance, and she did not—and does not—want a forbearance of her mortgage payment obligations.

**III.     Facts Specific to Plaintiff Charles Johnson**

158.     Plaintiff Charles Johnson has a mortgage serviced by Wells Fargo.

159.     Wells Fargo collects payments and performs services for Mr. Johnson, the borrower.

160.     At the end of March 2020, Mr. Johnson called Wells Fargo and asked to be placed into the forbearance program which allowed for him to receive short-

term payment relief for his mortgage account.

161.    Per his request, Mr. Johnson's forbearance period was to last three months, from April through June 2020.

162.    Mr. Johnson received a letter from Wells Fargo dated April 6, 2020 confirming that they had "suspended [his] obligation to make monthly mortgage payments for *three months*" and that Mr. Johnson needed to resume his "regular mortgage payment schedule beginning on *July 1, 2020*."

163.    Wells Fargo sent Mr. Johnson a letter dated May 26, 2020 informing him that his account was due for two payments "for the month(s) of April 1, 2020 through May 26, 2020."

164.    Concerned by this correspondence, Mr. Johnson called Wells Fargo and spoke to a customer representative and asked specifically to be removed from the program when his three-month period ended.

165.    He also asked about the process of resuming payments when his forbearance period ended on July 1, 2020.

166.    Mr. Johnson did not ask that his forbearance period be extended; in fact, he requested the exact opposite.

167.    Despite this conversation, Mr. Johnson received a letter from Wells Fargo dated June 17, 2020, asking Mr. Johnson if he wished to extend his period of forbearance for another three months.

168.    Mr. Johnson did not request that the period of forbearance be extended, and since he already called Wells Fargo he expected that he would be taken out of the forbearance program.

169.    However, in a letter from Wells Fargo dated July 8, 2020, Mr. Johnson was informed that Wells Fargo had yet again "suspended [his] mortgage payments for an additional three months."  Mr. Johnson was told that he would not need to resume his mortgage payments until October 1, 2020.

170.    At no point did Mr. Johnson provided any financial attestation or other

documentation as to his financial hardship or inability to make his mortgage payments to Wells Fargo.

171.    Mr. Johnson made a $1,446.80 mortgage payment on or about July 1, 2020 which Wells Fargo accepted.

172.    However, Wells Fargo failed to apply Mr. Johnson's July 1, 2020 payment to his mortgage account.

173.    Mr. Johnson made a $1,446.80 mortgage payment on or about August 1, 2020 which Wells Fargo accepted.

174.    However, Wells Fargo failed to apply Mr. Johnson's August 1, 2020 payment to his mortgage account, and decrease his principal and interest.

175.    Mr. Johnson called Wells Fargo on or about July 16, 2020, told a customer service representative that he never requested that his forbearance period be extended, and requested to be removed from the forbearance program.

176.    Wells Fargo did not provide Mr. Johnson with answers to his questions nor was he told that he was removed from the forbearance program.

177.    Instead, Mr. Johnson was told to not make a payment on his mortgage and that he would be receiving further correspondence.

178.    Mr. Johnson did not receive any further correspondence regarding the status of his mortgage account.

179.    Mr. Johnson called Wells Fargo three additional times—on or about August 6th, 7th, and 11th—but Wells Fargo was not able to tell Mr. Johnson that he had been removed from the forbearance program.

180.    Because Mr. Johnson's mortgage was placed in an extended forbearance program without his consent and without his knowledge, Wells Fargo incorrectly reported to the credit reporting agencies that his mortgage was in forbearance after July 1, 2020 and until October 1, 2020.

181.    Mr. Johnson's credit score dropped by 13 points after July 1, 2020 as a result of Wells Fargo's incorrectly reporting to the credit reporting agencies that his

mortgage was in forbearance.

182.    Wells Fargo placed Mr. Johnson's loan in forbearance without his consent, and incorrectly reported this to credit reporting agencies such that it appears on Mr. Johnson's credit report.

183.    Wells Fargo also incorrectly reported to the credit reporting agencies that the total balance of Mr. Johnson's mortgage, failing to account the payments made for the months of April 2020 and May 2020.

184.    Further, despite placing Mr. Johnson unwillingly into forbearance during these months and taking Mr. Johnson's payments, Wells Fargo reported to the credit reporting agencies that Mr. Johnson's mortgage balance increased from $141,175 in April 2020 to $143, 288 in June 2020.

185.    As such, Mr. Johnson suffered damages to his credit and reputation.

186.    Further, Wells Fargo's incorrect placement of Mr. Johnson's account into forbearance without his request, failure to account for the payments he made, incorrect reporting to the credit bureaus, and to date failure to remedy the issues, are continuously causing Mr. Johnson mental anguish, embarrassment, and stress.

## CLASS ALLEGATIONS

187.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and/or Fed. R. Civ. P. 23(b)(3) on behalf of themselves and a class of similarly situated individuals.

188.    Plaintiffs seek to represent the following classes:

**Nationwide Class**: All persons with a mortgage loan serviced by Wells Fargo whose mortgage was placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their request or whose forbearance term was involuntarily extended without the request of the homeowner.

**Georgia Class**: All persons with Georgia addresses with a mortgage loan serviced by Wells Fargo whose mortgage was placed into Wells Fargo's COVID-19

Mortgage Forbearance Program without their request or whose forbearance term was involuntarily extended without the request of the homeowner.

**New York Class**: All persons with New York addresses with a mortgage loan serviced by Wells Fargo whose mortgage was placed into Wells Fargo COVID-19 Mortgage Forbearance Program without their request or whose forbearance term was involuntarily extended without the request of the homeowner.

**California Class**: All persons with California addresses with a mortgage loan serviced by Wells Fargo whose mortgage was placed into Wells Fargo COVID-19 Mortgage Forbearance Program without their request or whose forbearance term was involuntarily extended without the request of the homeowner.[60]

189.   Numerosity: Members of the Nationwide, Georgia New York and California classes (collectively, the "Classes") are so numerous that joinder of all members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are tens of thousands of putative Class Members throughout the United States who are generally ascertainable by appropriate discovery. A class action is the only feasible method of adjudicating the rights of the affected borrowers, and, absent allowance of a certification of a class action, a failure of justice will result.

190.   Commonality: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following: whether Wells Fargo engaged and engages in the practices complained of and

---

[60]     Plaintiffs reserve the right to modify or to amend the definition of any proposed class and/or subclass before the Court determines whether certification is appropriate and as the parties engage in discovery.

whether such actions violate the law, as alleged. Specifically, the common question of law is whether Defendants' practice of unilaterally opting its mortgagor clients into its COVID-19 mortgage forbearance program so that they were unable to, among other things, obtain additional credit and/or to refinance their existing mortgage loans, violates the law.

191. <u>Typicality</u>: Plaintiffs' claims are typical of those of the other Class Members because, inter alia, all members of the Class were injured through the common misconduct described above and were subject to Wells Fargo's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

192. <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

193. <u>Superiority</u>: Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

194. The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class Members for the wrongs alleged because Wells Fargo would necessarily gain an unconscionable

1  advantage since they would be able to exploit and overwhelm the limited resources of

2  each individual Class Member with superior financial and legal resources; the costs

3  of individual suits could unreasonably consume the amounts that would be recovered;

4  proof of a common course of conduct to which Plaintiffs were exposed is

5  representative of that experienced by the Class and will establish the right of each

6  member of the Class to recover on the cause of action alleged; and individual actions

7  would create a risk of inconsistent results and would be unnecessary and duplicative

8  of this litigation.

9      195.   The class action is superior to all other available methods for the fair and

10  efficient adjudication of this controversy. Because of the number and nature of

11  common questions of fact and law, multiple separate lawsuits would not serve the

12  interest of judicial economy.

13      196.   Plaintiffs do not anticipate any difficulty in the management of this

14  litigation.

15  ## COUNT I

16  ### VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

17  ### O.C.G.A. §§ 10-1-390, ET SEQ.
   ### (On Behalf of Plaintiff Green & the Georgia Class)

18

19      197.   Plaintiffs re-allege and incorporate by reference the above-numbered

20  paragraphs.

21      198.   Wells Fargo committed unfair business acts and practices in violation of

22  The Georgia Fair Business Practices Act, O.C.G.A §§ 10-1-390, *et seq.* ("GFBA"),

23  by inaccurately reporting to credit reporting agencies that Plaintiff's and the

24  purported class members' mortgages were "in forbearance" when Plaintiff and the

25  putative Georgia class members never requested to be entered into Wells Fargo's

26  COVID-19 mortgage forbearance program.

27      199.   Further, Wells Fargo committed an unfair practice by failing to disclose

28  and provide Plaintiff Green and the Georgia class members with a voluntary option of

1   opting into the forbearance program should they chose to do so.

2       200.   Wells Fargo failed to disclose the consequences of the forbearance

3   option, and moreover, involuntarily enrolled Plaintiff Green and the Georgia Class

4   Members into this program.

5       201.   Wells Fargo's unconscionable, deceptive and/or unfair practices caused

6   damages to Plaintiff Green and the Georgia Class Members who were unaware that

7   their mortgages had been place "in forbearance" without their knowledge or consent.

8       202.   Defendants' foregoing deceptive acts and practices, including their

9   omissions, were likely to deceive, and did deceive, consumers acting reasonably

10   under the circumstances.

11       203.   As a direct and proximate result of Wells Fargo's unfair and deceptive

12   practices, Plaintiffs and the Georgia Class Members suffered and will continue to

13   suffer actual damages.

14       204.   As a direct and proximate result of Defendants' deceptive acts and

15   practices, including their omissions, Plaintiff Green and the Georgia Class Members

16   have been damaged as alleged herein, and are entitled to recover actual damages to

17   the extent permitted by law, including class action rules, in an amount to be proven at

18   trial.

19       205.   In addition, Plaintiff Green and the Georgia Class Members seek

20   equitable and injunctive relief against Wells Fargo on terms that the Court considers

21   reasonable, and reasonable attorneys' fees and costs.

## COUNT II

### VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT
### N.Y. GEN. BUS. LAW § 340
### (On Behalf of Plaintiff Jacob & the New York Class)

26       206.   Plaintiffs re-allege and incorporate by reference the above-numbered

27   paragraphs.

28       207.   Wells Fargo committed unfair business acts and practices in violation of

The New York General Business Law § 349, *et seq*., by inaccurately reporting to credit reporting agencies that Plaintiff Jacob's and the New York class members' mortgages were "in forbearance" when Plaintiff Jacob and the New York class members never requested to be entered into Wells Fargo's COVID-19 mortgage forbearance program.

208.   Further, Wells Fargo committed unfair practice by failing to disclose and provide Plaintiff Jacob and the New York class members with a voluntary option of opting into the forbearance program should Plaintiff and the New York class members chose to do so.

209.   Wells Fargo failed to disclose the consequences of the forbearance option, and moreover, involuntarily opted Plaintiff Jacob and the New York class members class into this program.

210.   Wells Fargo's practices were consumer oriented because they essentially placed unwilling consumers, who wished to continue making payments on their loans and preserve their credit history, into forbearance, without even notifying such consumers or obtaining their permission.

211.   Wells Fargo's unconscionable, deceptive and/or unfair practices caused damages to Plaintiff Jacob and the New York Class Members who were unaware that their mortgages had been place "in forbearance" without their knowledge or consent.

212.   Defendants' foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

213.   As a direct and proximate result of Wells Fargo's unfair and deceptive practices, Plaintiff Jacob and the New York class members suffered and will continue to suffer actual damages.

214.   Defendants' practice was misleading in a material respect because it caused Plaintiff and the New York Class members damages.

215.   Plaintiff Jacob and the New York Class members did not wish to opt in

to forbearance, and yet, that was not an option for them.

216.    As a direct and proximate result of Defendants' deceptive acts and practices, including their omissions, Plaintiff Jacob and the New York Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

217.    In addition, Plaintiff Jacob and the New York Class Members seek equitable and injunctive relief against Wells Fargo on terms that the Court considers reasonable and appropriate, as well as reasonable attorneys' fees and costs.

## COUNT III

### VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT CAL. CIV. CODE § 1785.1, *ET SEQ.* (CCCRAA) <u>(On Behalf of Plaintiff Johnson and the California Class)</u>

218.    Plaintiffs re-allege and incorporate by reference the above-numbered paragraphs

219.    Mr. Johnson on behalf of himself and the California Class brings the action under the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code. §§ 1785, *et seq.* ("CCCRAA").

220.    Mr. Johnson (and the members of the California Class) is/are a consumer as that term is defined by Cal. Civ. Code § 1785.3(b).

221.    In the regular course of its business operations, Wells Fargo routinely furnishes information to credit reporting agencies pertaining to transactions between Wells Fargo and its consumers, so as to provide information as to a consumer's credit worthiness, credit standing and credit capacity.

222.    This action concerns Wells Fargo's furnishing of false derogatory information on Mr. Johnson's consumer credit report, as defined by Cal. Civ. Code § 1785.3(c).

223.    Specifically, Wells Fargo furnished the information to the credit

1  reporting agencies (as defined by §m1788.3(d)) that Mr. Johnson was in forbearance,

2  while Mr. Johnson did not request to be placed in the forbearance, requested to be

3  excluded from the forbearance program and never request Wells Fargo to extend the

4  term of forbearance.

5      224.   Wells Fargo's reported information is also misleading because it implies

6  that Mr. Johnson requested to be in the forbearance when the opposite is true.

7      225.   Further, Wells Fargo failed to account for a number of payments Mr.

8  Johnson made and decrease the principle balance still owed to Wells Fargo, falsely

9  reporting a larger amount due to Wells Fargo on Mr. Johnson's credit report.

10      226.   Wells Fargo, its agents, subsidiaries, and partners are "persons" as

11  defined under the CCCRAA § 1788.3(j).

12      227.   Wells Fargo furnished and continues to furnish information it knows is

13  false, incomplete, misleading, and inaccurate in violation of Cal. Civ. 1785.25(a).

14      228.   The foregoing acts and omissions constitute numerous and multiple

15  violations of the CCCRAA.

16      229.   As evidenced above, Wells Fargo's violation of the CCRAA is willful.

17      230.   As a result of each and every violation of the CCCRAA, Mr. Johnson

18  and California Class members are entitled to damages; attorneys' fees and costs

19  pursuant to Cal. Civ. Code § 1785.31(a)(1) and, Cal. Civ. Code § 1785.31(d);

20  punitive damages of $100.00 up to $5,000.00 per willful violation of Cal. Civ. Code §

21  1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B); and equitable and

22  injunctive relief pursuant to Cal. Civ. Code § 1785.31(b).

23

24

25  ## COUNT IV

26  **VIOLATION OF THE CALIFORNIA ROSENTHAL ACT**
**CAL. CIV. CODE § 1788, *ET SEQ.* (RFDCPA)**
**(On Behalf of Plaintiff Johnson and the California Class)**

27

28

231.   Plaintiffs re-allege and incorporate by reference the above-numbered paragraphs.

232.   Wells Fargo is a "debt collector" as defined under the Cal. Civ. Code § 1788.2(b) because it collects, in the ordinary course of busines, on behalf of itself, numerous debts and payments from consumers.

233.   This matter involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.  As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(e)-(f);

234.   As discussed above, Mr. Johnson entered in a consumer credit transaction, involving an extension of credit pertaining to a certain Wells Fargo loan.

235.   Wells Fargo, without authority or consent of Mr. Johnson or other consumers, placed Mr. Johnson and thousands of California consumers into forbearance.

236.   Further, while Mr. Johnson never asked to be in forbearance, and expressly asked to be removed from forbearance program, Wells Fargo continued to keep Mr. Johnson in this program unwillingly, while collecting monthly mortgage payments and failing to apply these payments towards the principal balance and interest of the loan,

237.   Wells Fargo made representations that it will not place individuals into forbearance or extend the forbearance period beyond consumer requests, and yet, it did so despite having no authority to do so under the law or agreement of consumers.

238.   As such, Wells Fargo violated 15 U.S.C. § 1692e, 1692e(5), 1692e(10), 1692f (all of which are incorporated in Cal. Civ. Code 1788.17) for making misrepresentations regarding forbearance, placing unwilling consumers into forbearance,  and extending consumers' forbearance periods without their requests or authorization.

239.   Wells Fargo also falsely *communicated* to the credit bureaus that Mr.

Johnson and California class are in forbearance, in violation of 15 U.S.C. § 1692e(8), also incorporated in Cal. Civ. Code § 1788.17. Wells Fargo's false communications with third parties regarding Mr. Johnson's account, and the amount still due and owing, were also false under 1692e, 1692e(2), 1692e(5), and 1692e(10) (all of which are incorporated into the Rosenthal Act under Cal. Civ. Code 1788.17).

240.   Wells Fargo continued to collect the monthly mortgage fees, despite placing Mr. Johnson in forbearance and failing to apply these funds towards his mortgage account.

241.   As such, by failing to decrease the principal balance and interest after receiving payments from Mr. Johnson, Wells Fargo collected the amount not owed in violation of 15 U.S.C. §§ 1692f, and 1692f(1) (incorporated through Cal. Civ. Code 1788.17).

242.   Mr. Johnson seeks statutory damages, attorneys' fees and costs, pursuant to Cal. Civ. Code § 1788.30.

## COUNT V

### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Nationwide Class)

243.   Plaintiffs re-allege and incorporate by reference the above-numbered paragraphs.

244.   Plaintiffs and members of the Nationwide Class have conferred a benefit upon Wells Fargo in the following ways:

- Wells Fargo collected mortgage payments from Plaintiffs and the Nationwide Class that Wells Fargo did not apply to mortgage balances thus earning "float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners.

- By placing Plaintiffs and the Nationwide Class into forbearance

without their consent, Wells Fargo prevented Plaintiffs and the Nationwide Class from being able to re-finance their mortgage loans with other mortgage lenders during a time of historically low interest rates, thus capturing the mortgage loans of Plaintiffs and members of the Nationwide Class, locking them in at higher interest rates while continuing to earn profit from interest payments and other fees (and significantly impeding their chances of being able to refinance for the foreseeable future).

- Wells Fargo extended the lengths of the mortgages of Plaintiffs and members of the Nationwide Class by at least 3 months, and in many cases much longer, thus accruing the benefits of continued servicing of those loans, including collecting interest and fees, collecting a per-loan servicing fee, and publicly reporting to investors that they continued to service those mortgages.

- Wells Fargo earned additional fees for, among other things, filing incentive payments after loans are placed in forbearance.

- Taking advantage of new rules made pursuant to the CARES Act, Wells Fargo no longer forwards Fannie Mae borrowers' mortgage payments after four months if the borrowers have stopped paying because they are in forbearance programs, allowing Wells Fargo to continue holding those funds.

245. Wells Fargo's practice of placing Plaintiffs and members of the Nationwide Class into forbearance without their consent resulted in Plaintiffs and members of the Nationwide Class being denied the benefit of having their payments applied to their mortgage accounts and re-financing their loans at a lower interest rate.

246. Wells Fargo appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Nationwide Class.

247.    Under principles of equity and good conscience, Wells Fargo should not be permitted to retain the monies they unjustly received as a result of its wrongful conduct described herein.

248.    Accordingly, Plaintiffs, on behalf of themselves and the other members of the Nationwide Class, seek restitution and disgorgement of all amounts by which Wells Fargo has been unjustly enriched.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief and judgment against Defendants and each of them, as follows:

A.    Certifying this action as a class action;

B.    Designating Plaintiffs as class representatives under Federal Rule of Civil Procedure 23;

C.    Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

D.    Awarding Costs of suit;

E.    Awarding damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

F.    Awarding Statutory damages to be awarded to each class member of the New York Class under N.Y. Gen. Bus. Law. § 340, up to $2,000 (to each person);

G.    Awarding Attorneys' fees under N.Y. Gen. Bus. Law § 340 *et al* and O.C.G.A. §§ 10-1-399(d);

H.    Awarding Statutory, exemplary, and/or treble damages and attorneys' fees and costs under O.C.G.A. § 10-1-399(a) *et seq* to the attorneys and Georgia Class,

I.    Awarding Statutory damages pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) to California Class;

J.      Awarding Attorney's fees pursuant to Cal. Civ. Code § 1785.31(a)(1);

K.      Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

L.      Awarding statutory damages pursuant to Cal. Civ. Code § 1788.30, attorneys' fees and costs, to California Class;

M.      Awarding punitive damages, to the extent permitted by law, in an amount to be determined at trial;

N.      Awarding Plaintiffs incentive awards;

O.      Awarding Plaintiffs and the members of the Class any pre-judgment and post-judgment interest as may be allowed under the law and

P.      Imposing an injunction preventing Defendants from engaging in the conduct described herein and requiring Defendants to restore the Plaintiffs' and class members accounts to status quo ante, as though the account was never treated as being in forbearance status; and

Q.      Awarding such other and further relief as the Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a trial by jury of any and all triable issues.

Date: August 17, 2020                    **KAZEROUNI LAW GROUP, APC**

By: s/ Abbas Kazerounian
         Abbas Kazerounian, Esq.
         *Attorneys for Plaintiff and the Class*

1

**<u>Additional Counsel for Plaintiffs</u>**

2

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)

3

321 N Mall Drive, Suite R108
St. George, Utah 84790

4

Email: jason@kazlg.com
Phone: 800-400-6808

5

Fax: 800-520-5523

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT; Case No. 3:20-cv-05296-JD